**TERMINIX INTERNATIONAL, INC., Appellant,**

v.

**SECRETARY OF LABOR, Commonwealth of Kentucky, and Stephen L. Byers, Appellees.**

No. 2001–CA–001783–MR.

Court of Appeals of Kentucky.

Sept. 6, 2002.

Case Ordered Published by Court of Appeals Dec. 20, 2002.

James H. Stock, Jr., Memphis, TN, Sam E. Isaacs, II, Lexington, KY, for Appellant.

Gordon R. Slone, Frankfort, KY, for Appellee, Secretary of Labor.

Before BUCKINGHAM, HUDDLESTON, and JOHNSON, Judges.

## OPINION

BUCKINGHAM, Judge.

Terminix International, Inc., appeals from an opinion and order of the Franklin Circuit Court affirming a decision by the Kentucky Occupational Safety and Health Review Commission (Commission).[1] We affirm.

Appellee Stephen L. Byers was employed by Terminix beginning on or about May 15, 1995, as a termite technician at the Paducah office of Terminix. Terminix is a termite and pest control company that provides services to residential and commercial customers. Byers's job with Terminix was to spray a termite control chemical (termiticide) in houses and buildings.

On March 26, 1996, Byers was applying termiticide in the basement of Lourdes Hospital in Paducah. After lunch on that day, he was admitted to the hospital suffering from severe physical distress. Byers soon went into a semicomatose state. He was treated by Dr. Luke Ross and was diagnosed as suffering from organophosphate poisoning. Byers's condition resulted when the termiticide used by Terminix, Dursban TC, splashed onto Byers as he sprayed it.

On April 1, 1996, Dr. Ross released Byers to return to part-time sedentary work. Claiming that none was available, Terminix placed Byers on workers' compensation leave for approximately thirty days so that he could continue his recovery. On April 30, 1996, Dr. Ross released Byers to return to work. However, the release indicated that Byers should avoid exposure to organophosphates.

Dr. Roger Yeary, vice-president of health, safety, and environmental stewardship for Terminix's parent company, understood the effects of organophosphate poisoning. On May 1, 1996, he sought a clarification from Dr. Ross asking if the work restriction would allow for Byers's future exposure to organophosphates once his blood level of cholinesterase reached an acceptable level. Although Dr. Ross testified that he answered the inquiry in the affirmative, Dr. Yeary testified that he never received an answer from Dr. Ross.

On May 2, 1996, one day after Dr. Yeary's inquiry, Byers's employment was terminated by Gary Moss, Byers's supervisor. The termination of employment by Terminix stated that Byers was terminated due to the absolute restriction against exposure to organophosphates.

In the meantime, on April 4, 1996, Byers had filed a complaint with the Kentucky Secretary of Labor alleging KOSHA (Kentucky Occupational Safety and Health Act) violations. The citations resulting from Byers's complaint were eventually dismissed when the Labor Cabinet determined that it had no jurisdiction to issue the citations initially. Although Byers's complaint was filed prior to the termination of his employment, Terminix claimed that it was not aware of Byers's complaint at the time of his termination.

On July 16, 1996, Byers filed another complaint with the Labor Cabinet. This complaint was filed pursuant to KRS 338.121, and it alleged that Terminix ter-

---

1. This appeal was filed pursuant to Kentucky Revised Statutes (KRS) 338.091(1).

minated his employment in retaliation for his filing a KOSHA complaint. The Secretary of Labor investigated the complaint and issued a citation against Terminix. The citation stated that Terminix discriminated against Byers because he engaged in protected occupational safety and health activity.

Terminix contested the citation, and a hearing was held before the Commission hearing officer. The hearing officer concluded that Terminix discriminated against Byers for filing the KOSHA complaint. The hearing officer set a penalty of $3,000 and ordered Terminix to restore Byers to his position and pay him $800 in back pay. Terminix then filed a petition for discretionary review with the Commission. Rather than grant the petition, the Commission, on its own motion, called the case for review.

In an order entered on April 1, 1999, the Commission concluded that the hearing officer correctly disposed of the dispute in all respects except concerning the penalty. The Commission set the penalty at $1.00 rather than accept the $3,000 penalty proposed by the hearing officer.

After the Commission issued its decision and order, Terminix filed an appeal in the Franklin Circuit Court. The circuit court found substantial evidence supporting the facts and conclusions reached by the Commission and affirmed its decision and order. This appeal by Terminix followed.

■ Terminix's first argument on appeal is that the Labor Cabinet had no jurisdiction over Byers's discrimination complaint because its jurisdiction was preempted by United States Environmental Protection Agency (EPA) regulations covering pesticide users' working conditions. In support of its argument, Terminix cites KRS 338.021 which states that:

This chapter applies to all employers, employees, and places of employment throughout the Commonwealth except the following:

. . . .

Employers, employees and places of employment over which federal agencies other than the Occupational Safety and Health Administration of the United States Department of Labor exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health.

KRS 338.021(1)(b). Further, Terminix asserts that the EPA has adopted a regulation prohibiting employers who utilize pesticides from taking retaliatory action against employees who complain about unsafe working conditions related to the application of pesticides. See 40 C.F.R. § 170.7(b). That regulation states as follows:

Prohibited actions. The agricultural employer or the handler employer shall not take any retaliatory action for attempts to comply with this part or any action having the effect of preventing or discouraging any worker or handler from complying or attempting to comply with any requirement of this part.

Thus, Terminix maintains that the Labor Cabinet is precluded from asserting jurisdiction over Byers's claims for discrimination since the EPA has a regulation covering situations where retaliatory action is alleged by a handler of pesticides.

The Commission held that "since the EPA regulations are silent on occupational safety and health discrimination, Kentucky OSHA has jurisdiction under KRS 338.121 to protect pesticide workers who engage in a protected activity." Likewise, the Franklin Circuit Court determined that "Kentucky OSHA has jurisdiction under KRS 338.121 to protect pesticide workers who engage in protected activity."

■ It is apparent from a review of the federal regulation prohibiting retaliatory action by an employer that it applies only to an agricultural employer or employer for whom pesticides are applied to an agricultural establishment. Although Terminix maintains that the aforementioned federal regulation, 40 C.F.R. § 170.7(b), does not relate exclusively to agricultural situations, we disagree. The regulation prohibits retaliatory action taken by "[t]he agricultural employer or the handler employer." Terminix maintains it is apparent from the regulation that, by the use of the term "the handler employer," the regulation does not apply exclusively to agricultural situations.

"Handler employer" means "any person who is self-employed as a handler or who employs any handler, for any type of compensation." 40 C.F.R. § 170.3(2). The regulations define "handler" to include a self-employed person "[w]ho is employed for any type of compensation by an agricultural establishment or commercial pesticide handling establishment." 40 C.F.R. § 170.3(1). Finally, "commercial pesticide handling establishment" means "any establishment, other than an agricultural establishment, that: (1) Employs any person, including a self-employed person, to apply on an agricultural establishment, pesticides used in the production of agricultural plants; (2) Employs any person, including a self-employed person, to perform on an agricultural establishment, tasks as a crop advisor." Based on these regulations, we believe it is clear that the federal regulation prohibiting retaliatory employer's actions applies only to agricultural situations.

It is true that the EPA comprehensively occupies the field of regulation concerning the labeling and packaging of pesticides. *See* 40 C.F.R. § 156 and 7 U.S.C.S. § 136v(b). However, these regulations do not govern the working conditions of those employed to use pesticides. Only the working conditions of those employed to use pesticides in an agricultural environment are regulated. In short, we agree with the Commission that the EPA regulations are silent on occupational safety and health discrimination and that Kentucky OSHA thus has jurisdiction to protect pesticide workers who engage in a protected activity. *See Chao v. Mallard Bay Drilling, Inc.,* 534 U.S. 235, 122 S.Ct. 738, 151 L.Ed.2d 659 (2002), for a similar situation.

■ Terminix's next argument is that the circuit court erred in determining that the Commission's decision was supported by substantial evidence on the record as a whole. If substantial evidence from the record supported the Commission's conclusion, the circuit court was required to affirm it. *Jones v. Cabinet for Human Resources,* Ky.App., 710 S.W.2d 862, 866 (1986). Substantial evidence has been described as evidence that "when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Secretary, Labor Cabinet v. Boston Gear, Inc.,* Ky., 25 S.W.3d 130, 134 (2000), *quoting Bowling v. Natural Resources and Envtl. Protection Cabinet,* Ky.App., 891 S.W.2d 406, 409 (1994). The existence of evidence supporting a contrary conclusion does not require that the conclusion reached by the Commission be reversed. *Boston Gear,* 25 S.W.3d at 134. Terminix first argues that the Secretary of Labor failed to present a *prima facie* case of employment discrimination, and it asserts that Byers would have been terminated at any rate because of a slow down in business.

■ *Mt. Healthy City Sch. Dist. Bd. of Edu. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), provides the procedure for determining whether a violation of an anti-retaliation statute, such as KRS 338.121, occurred. *Boston Gear,* 25

S.W.3d at 134. First, a *prima facie* case of discrimination must be established. *Id.* To establish a *prima facie* case, the Secretary of Labor must prove that the employee engaged in protected activity that was a motivating factor to the employer in a subsequent adverse employment decision against the employee. *Mt. Healthy City Sch. Dist. Bd. of Edu.*, 429 U.S. at 287, 97 S.Ct. 568. In *First Property Management Corp. v. Zarebidaki*, Ky., 867 S.W.2d 185 (1993), the court indicated that the motivating factor must be "substantial," but it noted that "substantial motivating factor" does not mean "primary" or "sole" motivating factor. *Id.* at 186, 188–89. After the *prima facie* case is established, if the employer seeks to overcome the presumption that arises, it must show that the same action would have been taken even had the employee not engaged in protected activity. *Boston Gear*, 25 S.W.3d at 134.

 Terminix argues that the Secretary of Labor did not establish that Byers engaged in a protected activity that was a motivating factor to Terminix in its subsequent termination of Byers's employment. The protected activity, as found by the Commission and the circuit court, was the statement made by Brenda Byers, Stephen Byers's mother, to Gary Moss when she allegedly told him she was going to call OSHA. Terminix argues that the statement by Brenda Byers was not protected activity within the meaning of KRS 338.121(3)(a) because it was not an action by an "employee."

At the time Brenda Byers made her statement, Stephen Byers was still in the hospital suffering from a reaction to organophosphate poisoning. Moss denied that he had ever seen Brenda Byers or spoken with her at any time prior to June 17,

1998. However, the Commission accepted Brenda Byers's testimony as credible and determined that the protected activity was the phone call placed by Brenda Byers while Stephen Byers was being treated in the hospital. *Citing Kennard v. Louis Zimmer Communications, Inc.*, 632 F.Supp. 635 (E.D.Pa.1986), and *Donovan v. Freeway Construction Co.*, 551 F.Supp. 869 (D.R.I.1982), the Commission correctly concluded that Brenda Byers's phone call to OSHA on her son's behalf was a protected activity.[2]

 The next question is whether Byers's engaging in the protected activity was a motivating factor to Terminix in its subsequent action terminating Byers's employment. Again, we note that the hearing officer accepted the testimony of Brenda Byers that she told Gary Moss, Stephen Byers's supervisor, that she was going to call OSHA for her son. Thus, Terminix had notice that an OSHA complaint was going to be filed.

 As the Commission noted, rarely will direct evidence of such motivation be available. Thus, resort to circumstantial evidence must be made. *Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 365 (8th Cir. 1994). In the case *sub judice*, although no direct evidence suggested that Terminix was motivated by the action of Brenda Byers, circumstantial evidence supported the conclusion that her action was a substantial motivating factor in Terminix's action against Stephen Byers.

In addition to Brenda Byers confronting Gary Moss about the working conditions and notifying him that she was going to call OSHA, the situation with Dr. Yeary supports the Commission's decision. Dr. Yeary understood that blood levels of cho-

---

**2.** In the *Kennard* case the court found that a telephone call to OSHA by an employee's husband was a protected activity. Similarly, in the *Donovan* case the court found that a call to OSHA by an employee's mother was a protected activity.

linesterase return to normal after exposure to organophosphate ends, and he contacted Dr. Ross to confirm that Byers's work restriction extended only to the extent his cholinesterase blood levels deviated too greatly from normal. Nonetheless, Terminix terminated Byers a day later without any information concerning Dr. Ross's response.

Since the inquiry concerning the work restriction was ongoing and Terminix representative Dr. Yeary believed Byers would be able to return to work given the nature of organophosphate poisoning, it was a reasonable conclusion that Terminix was motivated by Brenda Byers's complaint to OSHA rather than the work restriction when it terminated Stephen. Thus, the Secretary of Labor presented substantial evidence that Brenda Byers's action was a substantial motivating factor in Terminix's decision to terminate Stephen. Since Terminix fired Stephen because of the actions of his mother, her actions may be attributed to him. Further, those actions were protected actions. *See* KRS 338.121.

Accordingly, the Secretary of Labor successfully established that Stephen Byers engaged in a protected activity and that the activity was a substantial motivating factor in Terminix's decision to terminate him. Thus, the Secretary of Labor met its burden to establish a *prima facie* case of prohibitive retaliation by Terminix against Stephen Byers.

■ The Commission then held that once the Secretary of Labor had made its *prima facie* case, the burden of going forward with the evidence shifted to Terminix to articulate a legitimate, nondiscriminatory reason for terminating Byers. Terminix noted that it gave such reason when it stated that it terminated Byers because it was following the work restriction by Dr. Ross that Byers not be subjected to orga-

nophosphates. In fact, the Commission determined that Terminix did articulate a legitimate reason for terminating Byers.

Terminix argues that the Secretary of Labor failed to successfully prove that Terminix's explanation for the termination was a mere pretext. The Commission first focused upon Terminix's understanding of organophosphate poisoning. Dr. Yeary knew that blood levels of cholinesterase may be monitored to protect workers from poisoning associated with organophosphate exposure. Furthermore, he sought a clarification from Dr. Ross to determine if the work restriction allowed exposure to organophosphate as long as Byers's blood was closely monitored. These actions revealed that Dr. Yeary believed Byers could return to work and that he wanted to be certain about the restrictions' breadth before concluding that the restriction prohibited Byers from working as a termite technician.

The Commission then considered the actions of Gary Moss. Within a day of Dr. Yeary's fax to Dr. Ross, and before being notified of any response from Dr. Ross, Moss fired Byers. Although Moss claimed that the work restriction motivated the termination, Dr. Yeary's knowledge and actions counter that assertion. The Commission relied upon Dr. Yeary's understanding of organophosphate poisoning and the closeness in time of Byers's termination to Dr. Yeary's fax to Dr. Ross in concluding that Moss's explanation was merely a pretext. Since the Commission based its decision upon substantial evidence in the record, its decision was not erroneous.

Next, relying on the *Mt. Healthy* case, Terminix argues that it could avoid liability if it proved that its employment decision would have been taken regardless of the employee's participation in a protected ac-

tivity. According to Terminix, it successfully established that Byers would have been terminated regardless of his protected activity. It claims that business slows in the summer to the point where work would not have been available for Byers. Thus, Terminix argues that Byers's termination was inevitable. However, the Commission was not persuaded by this explanation.

The Commission and the circuit court relied upon Byers's employment history with Terminix. Byers began working for Terminix in May 1995, and he worked through the summer of that year without being terminated or laid-off for a lack of work. Terminix asserts that Byers was retained through the summer of 1995 because of a special compliance program that generated more summer work than is typical. However, having completed the compliance program, Terminix maintains that the summer work of 1996 was expected to be significantly lower than in 1995.

While this evidence may contradict or counter the conclusion reached by the Commission, its decision is not rendered erroneous simply because this contradictory evidence exists. *Boston Gear,* 25 S.W.3d at 134, *citing Kentucky Comm'n on Human Rights v. Fraser,* Ky., 625 S.W.2d 852, 856 (1981). The Commission, as the ultimate fact-finder involving disputes such as this, may believe certain evidence and disbelieve other evidence and accord more weight to one piece of evidence than another. *Cole v. Gilvin,* Ky. App., 59 S.W.3d 468, 473 (2001), *citing Uninsured Employers' Fund v. Garland,* Ky., 805 S.W.2d 116, 117 (1991).

Byers was employed from May 1995 until one month after the poisoning incident. In addition, he had not been reprimanded or otherwise disciplined for inferior work, tardiness, or some other negative employment attribute. According to the evidence, it appeared that Byers was a valued worker. In addition, there was no evidence besides Moss's testimony that Byers would have been the employee discharged even if the discharge of an employee was inevitable. Since Byers presented substantial evidence upon which the Commission reasonably found that he would not have been discharged absent improper motivation, the circuit court properly affirmed the decision of the Commission.

Finally, Terminix claims that the circuit court failed to consider the record. It claims that the court did not have the entire record when it made its decision and that the court could not have found substantial evidence in the record to support the Commission's decision if it did not have the record to review. The circuit court's opinion contains several references to the record.

While it is not clear whether the circuit court possessed all, none, or a portion of the Commission's record, the court's reference to the record in its opinion illustrates that it did review the record. Also, Terminix does not claim that the court relied upon evidence that does not exist. Indeed, the evidence relied upon by the court is found in the record. Finally, Terminix did not allow the circuit court to address this allegation, did not move the court to amend or modify its order, and did not allege that it was prejudiced by a failure of the court to consider the whole record. Accordingly, we reject this argument.

The opinion and order of the Franklin Circuit Court is affirmed.

ALL CONCUR.