## CHAO, SECRETARY OF LABOR *v.* MALLARD BAY DRILLING, INC.

No. 00–927.   Argued October 31, 2001—Decided January 9, 2002

Stevens, J., delivered the opinion of the Court, in which all other Members joined, except Scalia, J., who took no part in the decision of the case.

*Matthew D. Roberts* argued the cause for petitioner. With him on the briefs were *Solicitor General Olson, Acting Solicitor General Underwood, Deputy Solicitor General Kneedler, Judith E. Kramer, Allen H. Feldman, Nathaniel I. Spiller, Ellen L. Beard, Edward D. Sieger, James S. Carmichael,* and *Robert F. Duncan.*

*Patrick J. Veters* argued the cause for respondent. With him on the brief was *John L. Duvieilh.**

JUSTICE STEVENS delivered the opinion of the Court.

Respondent operates a fleet of barges used for oil and gas exploration. On April 9, 1997, one of those barges, "Rig 52," was towed to a location in the territorial waters of Louisiana, where it drilled a well over two miles deep. On June 16, 1997, when the crew had nearly completed drilling, an explosion occurred, killing four members of the crew and injuring two others. Under United States Coast Guard regulations, the incident qualified as a "marine casualty" because it involved a commercial vessel operating "upon the navigable waters of the United States." 46 CFR § 4.03–1 (2000).

Pursuant to its statutory authority, the Coast Guard conducted an investigation of the casualty. See 46 U. S. C. §§ 6101–6104, 6301–6308 (1994 ed. and Supp. V).[1] The resulting report was limited in scope to what the Coast Guard described as "purely vessel issues," and noted that the Coast Guard "does not regulate mineral drilling operations in state waters, and does not have the expertise to adequately analyze all issues relating to the failure of an oil/natural gas well." App. to Pet. for Cert. 24a. The Coast Guard determined that natural gas had leaked from the well, spread throughout the barge, and was likely ignited by sparks in the pump room. The report made factual findings concerning the crew's actions, but did not accuse respondent of violating any Coast Guard regulations. Indeed, the report noted the

---

*Jeffrey Robert White* and *Frederick M. Baron* filed a brief for the Association of Trial Lawyers of America as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Waterways Operators by *Barbara L. Holland* and *Alan P. Sherbrooke;* for the Associated General Contractors of America et al. by *Charles T. Carroll, Jr.,* and *Carl Larsen Taylor;* and for the Transportation Institute by *John Longstreth.*

[1] Unless otherwise noted, all United States Code references in this opinion are to the 1994 edition.

limits of the Coast Guard's regulation of vessels such as Rig 52: The report explained that, although Rig 52 held a Coast Guard Certificate of Documentation, it had "never been inspected by the Coast Guard and is not required to hold a Certificate of Inspection or be inspected by the Coast Guard." *Id.*, at 27a. In Coast Guard terminology, Rig 52 was an "uninspected vessel," see 46 U. S. C. § 2101(43), as opposed to one of the 14 varieties of "inspected vessels" subject to comprehensive Coast Guard regulation, see 46 U. S. C. § 3301 (1994 ed. and Supp. V).

Based largely on information obtained from the Coast Guard concerning this incident, the Occupational Safety and Health Administration (OSHA) cited respondent for three violations of the Occupational Safety and Health Act of 1970 (OSH Act or Act), 84 Stat. 1590, as amended, 29 U. S. C. § 651 *et seq.* (1994 ed. and Supp. V), and the Act's implementing regulations. The citations alleged that respondent failed promptly to evacuate employees on board the drilling rig; failed to develop and implement an emergency response plan to handle anticipated emergencies; and failed to train employees in emergency response. No. 97–1973, 1998 WL 917067, *1 (OSHRC, Dec. 28, 1998). Respondent did not deny the charges, but challenged OSHA's jurisdiction to issue the citations on two grounds: that Rig 52 was not a "workplace" within the meaning of § 4(a) of the Act;[2] and that § 4(b)(1) of the Act pre-empted OSHA jurisdiction because the Coast Guard had exclusive authority to prescribe

---

[2] Section 4(a) of the Act, as codified in 29 U. S. C. § 653(a), provides in part: "This chapter shall apply with respect to employment performed in a workplace in a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, Guam, the Trust Territory of the Pacific Islands, Wake Island, Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act, Johnston Island, and the Canal Zone" (citation omitted).

and enforce standards concerning occupational safety and health on vessels in navigable waters.[3]

The Administrative Law Judge (ALJ) rejected both jurisdictional challenges. Finding that respondent's "employees were not performing navigational-related activities" and that Rig 52 "was stationary and within the territorial boundaries of the State of Louisiana," he concluded that Rig 52 was a "workplace" within the meaning of the Act. *Id.*, at *3. The ALJ then held that the Coast Guard had not pre-empted OSHA's jurisdiction under § 4(b)(1), explaining that respondent had identified no basis for an "industry-wide exemption from OSHA regulations" for uninspected vessels, and had failed to identify any Coast Guard regulation "specifically regulat[ing]" the subject matter of the citations. *Id.*, at *4. In the ALJ's view, another federal agency cannot pre-empt OSHA's jurisdiction under § 4(b)(1) unless that agency *exercises* its statutory authority to regulate a particular working condition: Mere possession of the power to regulate is not enough.[4] The Occupational Safety and Health Review Commission declined review of the ALJ's decision and issued a final order assessing a penalty against respondent of $4,410 per citation. *Id.*, at *1.

---

[3] Section 4(b)(1) of the Act, as codified in 29 U. S. C. § 653(b)(1), provides: "Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under [§ 274 of the Atomic Energy Act of 1954], exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health."

[4] According to the ALJ: "The term 'exercise,' as used in § 4(b)(1), requires an actual assertion of regulatory authority as opposed to a mere possession of authority. OSHA jurisdiction will be preempted only as to those working conditions actually covered by the agency regulations. . . . The OSHA citation alleges that [respondent] failed to evacuate employees and failed to have an emergency response plan. [Respondent] does not argue or identify any similar requirement enforced by the U. S. Coast Guard." No. 97–1973, 1998 WL 917067, *3–4 (OSHRC, Dec. 28, 1998).

Without reaching the question whether Rig 52 was a "workplace" under § 4(a) of the OSH Act, the United States Court of Appeals for the Fifth Circuit reversed. It held that the Coast Guard "has exclusive jurisdiction over the regulation of working conditions of seamen aboard vessels such as [Rig 52], thus precluding OSHA's regulation under Section 4(b)(1) of the OSH Act." 212 F. 3d 898, 900 (2000). The Court of Appeals determined that this pre-emption encompassed uninspected vessels such as Rig 52, as well as inspected ones, explaining that the Coast Guard "has in fact exercised" its "authority to issue safety regulations for uninspected vessels"—as § 4(b)(1) requires for pre-emption. *Id.,* at 901 (stating, with respect to uninspected vessels, that the Coast Guard has issued regulations concerning "life preservers and other lifesaving equipment; emergency alerting and locating equipment; fire extinguishing equipment; backfire flame control; ventilation of tanks and engine spaces; cooking, heating, and lighting systems; safety orientation and emergency instructions; action required after an accident; and signaling lights"). However, the court conceded that "[b]ecause a drilling barge is not self-propelled, some of these regulations, by their nature, do not apply to [Rig 52]." *Id.,* at 901, n. 6.

Because other Courts of Appeals have construed the preemptive force of § 4(b)(1) more narrowly than did the Fifth Circuit, akin to the interpretation adopted by the ALJ in this case,[5] we granted certiorari to resolve the conflict. 531 U. S. 1143 (2001). We reverse, as the statute requires us to do.

The OSH Act imposes on covered employers a duty to provide working conditions that "are free from recognized hazards that are causing or are likely to cause death or serious

---

[5] See *Herman* v. *Tidewater Pacific, Inc.,* 160 F. 3d 1239 (CA9 1998); *In re Inspection of Norfolk Dredging Co.,* 783 F. 2d 1526 (CA11), cert. denied, 479 U. S. 883 (1986); *Donovan* v. *Red Star Marine Services, Inc.,* 739 F. 2d 774 (CA2 1984), cert. denied, 470 U. S. 1003 (1985).

bodily harm" to their employees, as well as an obligation to comply with safety standards promulgated by the Secretary of Labor. 29 U. S. C. §§ 654(a)(1), (2).[6] The coverage of the Act does not, however, extend to working conditions that are regulated by other federal agencies. To avoid overlapping regulation, § 4(b)(1) of the Act, as codified in 29 U. S. C. § 653(b)(1), provides:

> "Nothing in this [Act] shall apply to working conditions of employees with respect to which other Federal agencies . . . *exercise* statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health." (Emphasis added.)

Congress' use of the word "exercise" makes clear that, contrary to respondent's position, see, *e. g.,* Tr. of Oral Arg. 39, mere possession by another federal agency of unexercised authority to regulate certain working conditions is insufficient to displace OSHA's jurisdiction. Furthermore, another federal agency's minimal exercise of some authority over certain conditions on vessels such as Rig 52 does not result in complete pre-emption of OSHA jurisdiction, because the statute also makes clear that OSHA is only pre-empted if the working conditions at issue are the particular ones "with respect to which" another federal agency has regulated, and if such regulations "affec[t] occupational safety or health." § 653(b)(1).[7] To determine whether Coast Guard

---

[6] The Secretary of Labor has delegated her authority under the Act to the Assistant Secretary for Occupational Safety and Health, who heads OSHA. See 65 Fed. Reg. 50017 (2000).

[7] The Circuits have recognized at least two approaches for defining "working conditions" under § 4(b)(1). A "hazard-based" approach, which the Secretary of Labor endorses, focuses on "the particular physical and environmental hazards encountered by an employee" on the job. Brief for Petitioner 24; see, *e. g., Donovan* v. *Red Star Marine Services, Inc.,* 739 F. 2d, at 779–780. In contrast, an "area-based" approach defines "working conditions" as the "area in which an employee customarily goes about his daily tasks." *Southern R. Co.* v. *Occupational Safety and Health Review*

regulations have pre-empted OSHA's jurisdiction over the working conditions on Rig 52, it is thus necessary to examine the contours of the Coast Guard's exercise of its statutory authority, not merely the existence of such authority.

Congress has assigned a broad and important mission to the Coast Guard. Its governing statute provides, in part:

> "The Coast Guard ... shall administer laws and promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States covering all matters not specifically delegated by law to some other executive department ...." 14 U. S. C. § 2 (2000 ed.).

Under this provision, the Coast Guard possesses authority to promulgate and enforce regulations promoting the safety of vessels anchored in state navigable waters, such as Rig 52. As mentioned above, however, in defining the Coast Guard's regulatory authority, Congress has divided the universe of vessels into two broad classes: "inspected vessels" and "uninspected vessels." In 46 U. S. C. § 3301 (1994 ed. and Supp. V), Congress has listed 14 types of vessels that are "subject to inspection" by the Coast Guard pursuant to a substantial body of rules mandated by Congress.[8] In contrast, 46

---

*Comm'n*, 539 F. 2d 335, 339 (CA4), cert. denied, 429 U. S. 999 (1976). We need not choose between these interpretations, however, because the Coast Guard did not regulate the "working conditions" at issue in this case under either definition of the term.

[8] "The following categories of vessels are subject to inspection under this part: (1) freight vessels. (2) nautical school vessels. (3) offshore supply vessels. (4) passenger vessels. (5) sailing school vessels. (6) seagoing barges. (7) seagoing motor vessels. (8) small passenger vessels. (9) steam vessels. (10) tank vessels. (11) fish processing vessels. (12) fish tender vessels. (13) Great Lakes barges. (14) oil spill response vessels."

U. S. C. § 2101(43) defines an "uninspected vessel" as "a vessel not subject to inspection under section 3301 . . . that is not a recreational vessel."

The parties do not dispute that OSHA's regulations have been pre-empted with respect to *inspected* vessels, because the Coast Guard has broad statutory authority to regulate the occupational health and safety of seamen aboard inspected vessels, 46 U. S. C. § 3306 (1994 ed. and Supp. V), and it has exercised that authority. Indeed, the Coast Guard and OSHA signed a "Memorandum of Understanding" (MOU) on March 17, 1983, evidencing their agreement that, as a result of the Coast Guard's exercise of comprehensive authority over inspected vessels, OSHA "may not enforce the OSH Act with respect to the working conditions of seamen aboard inspected vessels." 48 Fed. Reg. 11365. The MOU recognizes that the exercise of the Coast Guard's authority—and hence the displacement of OSHA jurisdiction—extends not only to those working conditions on inspected vessels specifically discussed by Coast Guard regulations, but to all working conditions on inspected vessels, including those "not addressed by the specific regulations." *Ibid.* Thus, as OSHA recognized in the MOU, another agency may "exercise" its authority within the meaning of § 4(b)(1) of the OSH Act either by promulgating specific regulations or by asserting comprehensive regulatory authority over a certain category of vessels.

Uninspected vessels such as Rig 52, however, present an entirely different regulatory situation. Nearly all of the Coast Guard regulations responsible for displacing OSHA's jurisdiction over inspected vessels, as described in the MOU, do not apply to uninspected vessels like Rig 52. See 46 U. S. C. § 2101(43). Rather, in the context of uninspected vessels, the Coast Guard's regulatory authority—and exercise thereof—is more limited. With respect to uninspected vessels, the Coast Guard regulates matters related to marine

safety, such as fire extinguishers, life preservers, engine flame arrestors, engine ventilation, and emergency locating equipment. See 46 U. S. C. § 4102 (1994 ed. and Supp. V); 46 CFR pts. 24–26 (2000). Because these general marine safety regulations do not address the occupational safety and health concerns faced by inland drilling operations on uninspected vessels, they do not pre-empt OSHA's authority under § 4(b)(1) in this case. Indeed, as the Court of Appeals acknowledged, many of these general Coast Guard regulations for uninspected vessels do not even apply to stationary barges like Rig 52. See 212 F. 3d, at 901, n. 6.

In addition to issuing these general marine safety regulations, the Coast Guard has exercised its statutory authority to regulate a number of specific working conditions on certain types of uninspected vessels. For example, the Coast Guard regulates drilling operations that take place on the outer continental shelf. See 43 U. S. C. § 1333(a)(1); 33 CFR pt. 142 (2000). And it is true that some of these more specific regulations would, pursuant to § 4(b)(1), pre-empt OSHA regulations covering those particular working conditions and vessels. But respondent has not identified any specific Coast Guard regulations that address the types of risk and vessel at issue in this case: namely, dangers from oil-drilling operations on uninspected barges in inland waters. Simply because the Coast Guard has engaged in a limited exercise of its authority to address certain working conditions pertaining to certain classes of uninspected vessels does not mean that *all* OSHA regulation of *all* uninspected vessels has been pre-empted. See 29 U. S. C. § 653(b)(1) (pre-emption only extends to working conditions *"with respect to which"* other federal agencies have exercised their authority (emphasis added)). Because the Coast Guard has neither affirmatively regulated the working conditions at issue in this case, nor asserted comprehensive regulatory jurisdiction

over working conditions on uninspected vessels, the Coast Guard has not "exercise[d]" its authority under § 4(b)(1).[9]

We think it equally clear that Rig 52 was a "workplace" as that term is defined in § 4(a) of the Act. The vessel was located within the geographic area described in the definition: "a State," 29 U. S. C. § 653(a), namely, Louisiana. Nothing in the text of § 4(a) attaches any significance to the fact that the barge was anchored in navigable waters. Rather, the other geographic areas described in § 4(a) support a reading of that provision that includes a State's navigable waters: for example, § 4(a) covers the Outer Continental Shelf, and sensibly extends to drilling operations attached thereto. Cf. 43 U. S. C. § 1333(a)(1).

Accordingly, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE SCALIA took no part in the decision of this case.

---

[9] The statutory provisions themselves resolve this case, because the Coast Guard has not "exercise[d]" authority under § 4(b)(1) with respect to the working conditions at issue here. It is worth noting, however, that this interpretation of § 4(b)(1)'s pre-emptive scope comports with the OSH Act's fundamental purpose: "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U. S. C. § 651(b). As respondent declared at oral argument, its interpretation of § 4(b)(1) would mean that if the Coast Guard regulated marine toilets on Rig 52 and nothing more, any OSHA regulation of the vessel would be pre-empted. Tr. of Oral Arg. 20. Such large gaps in the regulation of occupational health and safety would be plainly inconsistent with the purpose of the OSH Act.