# Department of Transportation Authority to Exempt Canadian Truck Drivers From Criminal Liability for Transporting Explosives

The Department of Transportation possesses the authority to issue a regulation that, under section 845(a)(1) of title 18, would exempt Canadian truck drivers from criminal liability under section 842(i) of that title.

The Department of Transportation, however, has not issued such a regulation, and therefore section 842(i) liability would attach to a Canadian truck driver transporting explosives in the United States.

February 6, 2003

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF TRANSPORTATION
AND
THE ACTING CHIEF COUNSEL
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES

We have been asked by the Department of Transportation ("DoT") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to resolve a dispute regarding section 1123(b) of the Safe Explosives Act, Pub. L. No. 107-296, 116 Stat. 2135, 2284 (2002) (the "Act"), which became effective January 24, 2003.[1] In particular, we have been asked to address the application of this provision to Canadian truck drivers who "ship or transport" or "receive or possess" explosives in interstate or foreign commerce. Because of the exceedingly short time period we were given to provide our advice, we have limited our discussion to this particular fact situation.

Section 1123(b) of the Act amended section 842(i) of title 18, United States Code, by adding several categories to the list of prohibited persons who may not lawfully "ship or transport any explosive in interstate or foreign commerce" or "receive or possess any explosive which has been shipped or transported in interstate or foreign commerce." The existing law covered any person who was a felon, a fugitive from justice, an unlawful user or addict of any controlled substance, or had been "adjudicated as a mental defective." 18 U.S.C. § 842(i) (2000). The Act added three new categories of persons: aliens (excluding aliens lawfully admitted for permanent residence, as defined by section 101(a)(20) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(20), and four narrow categories of aliens present in the United States for specific purposes), persons dishonorably discharged from the armed forces, and former citizens of the United States who have renounced their citizenship. Pub. L. No. 107-296, § 1123(b), 116 Stat. at 2284. Section 1126 of the Act authorizes the Attorney General to grant

---

[1] See Homeland Security Act of 2002, Pub. L. No. 107-296, § 4, 116 Stat. 2135, 2142 (2002).

relief from this prohibition if he "determines that the circumstances regarding the applicability of section 842(i), and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of such relief is not contrary to the public interest." 116 Stat. at 2285 (to be codified at 18 U.S.C. § 845(b)(2)).

Section 845(a)(1) of title 18 provides exemptions to some of the criminal prohibitions contained in chapter 40 of title 18, including the prohibition contained in section 842(i). The relevant exemption here states that the provisions of section 842(i) "shall not apply to . . . any aspect of the transportation of explosive materials via railroad, water, highway, or air which are regulated by the United States Department of Transportation and agencies thereof, and which pertain to safety." 18 U.S.C. § 845(a)(1).

The question presented for resolution by our Office is whether the prohibition in section 842(i) on "alien[s]" "ship[ping] or transport[ing]" or "receiv[ing] or possess[ing]" explosives forbids Canadian truck drivers from driving explosives into the United States. ATF posits that the answer to that question is "yes," and that the sole mechanism for these truckers to obtain relief from this prohibition is to apply to ATF for "relief from disabilities" under section 845(b), as amended. DoT, by contrast, argues that the exemption contained in section 845(a)(1) provides an exemption from criminal liability for the Canadian truck drivers.

For the reasons set forth below, we conclude that DoT possesses the authority to issue a regulation that, under section 845(a)(1), would exempt Canadian truck drivers from criminal liability under section 842(i). We further conclude, however, that DoT has not issued such a regulation and therefore section 842(i) liability would attach to a Canadian truck driver transporting explosives in the United States.

## I.

As noted above, section 845(a) of title 18 provides exemptions to some of the criminal prohibitions contained in chapter 40 of title 18, including the prohibition contained in section 842(i).[2] The relevant exemption states that the provisions of section 842(i) "shall not apply to . . . any aspect of the transportation of explosive materials via railroad, water, highway, or air which are regulated by the United States Department of Transportation and agencies thereof, and which pertain to safety." 18 U.S.C. § 845(a)(1) (2000). To decide whether section 845(a)(1) provides an exemption from criminal liability for the Canadian truck drivers, we

---

[2] Section 845(a)(1) does not apply to the criminal offenses statutorily excepted from the exemption. *See* 18 U.S.C. § 845(a)(1) ("Except in the case of subsection (l), (m), (n), or (o) of section 842 and subsections (d), (e), (f), (g), (h), and (i) of section 844 of this title, [chapter 40] shall not apply to . . . any aspect of the transportation . . . .").

first define the reach of the exemption and then discuss whether DoT has issued a regulation that falls within section 845(a)(1).

## A.

The precise contours of the exemption in section 845(a)(1) are not easy to discern from the statutory text. The exemption uses two plural verbs—"are" and "pertain"—stating that the criminal provisions of chapter 40 "shall not apply to . . . any aspect of the transportation of explosive materials . . . which *are* regulated by" DoT "and which *pertain* to safety." Plural verbs, of course, must correspond to a plural subject. And the only possible plural subject in section 845(a)(1) is the noun "materials."[3] A literal reading of this language would therefore lead to the conclusion that the exemption is triggered by any DoT regulation of the *explosive materials* in question. And, indeed, two courts have read the exemption this way. *See United States v. Illingworth*, 489 F.2d 264, 265 (10th Cir. 1973) ("The exception refers to *materials* which are regulated by the Department"); *id.* ("the dynamite which Illingworth carried with him on the planes was . . . regulated"); *United States v. Petrykievicz*, 809 F. Supp. 794, 797 (W.D. Wash. 1992) ("A proper grammatical reading of the exception results in an interpretation that provides that if the explosive materials transported via air 'are' regulated, the exception applies."); *id.* at 799 ("Section 845 of Title 18 excludes the application of Chapter 40 of Title 18 if the explosive *materials* being transported are regulated by the Department of Transportation.") (emphasis added).

Yet, despite the undeniable force of the argument that this is the most grammatically correct reading of the exemption, there are also powerful reasons to question this reading of section 845(a)(1). First, it is possible that construing section 845(a)(1) as outlined above would render many of the substantive criminal prohibitions of chapter 40 meaningless. As the Western District of Washington has pointed out, this reading could "result[] in an interpretation that provides that if the explosive materials transported . . . 'are' regulated [by DoT], the exception applies." 809 F. Supp. at 797. But, DoT, of course, regulates all, or nearly all, explosives in some fashion, for example, by regulating the explosives' "labeling, packaging, mode of transportation, placarding and shipping papers." *Id.*; *accord* DoT Submission, Tab 1, at 2–3. Therefore, to construe section 845(a)(1) to exempt an individual from criminal liability for transporting explosives simply because the explosives themselves were in some way regulated by DoT would be to "eviscerate[]" the criminal provisions of chapter 40. *United States v. Fiorillo*, 186 F.3d

---

[3] DoT suggests that "pertain" could correspond to "agencies." DoT Submission, Tab 3, at 5. But this construction does not account for the fact that the full text of the amendment reads "*and* which pertain to safety." The phrase "the United States Department of Transportation and agencies thereof, *and* which pertain to safety" simply does not express the idea that the *agencies* must pertain to safety. Moreover, it is unclear that such a construction would have limiting effect because we are uncertain whether the jurisdiction of any DoT agency could be characterized as unrelated to safety.

1136, 1153 (9th Cir. 1999). Such a construction would mean, for example, that an individual who transported stolen explosives, knowing they were stolen, in violation of section 842(h) of title 18, would not be liable if DoT had a regulation specifying how explosives should be stored. *Cf. id.* at 1153. Under such a reading, even a single DoT regulation concerning explosives would mean that no one would ever be liable for transporting explosives in violation of chapter 40.

Second, construing section 845(a)(1) as outlined above could lead to the opposite, yet equally absurd, conclusion that the *exemption* from criminal liability has no meaning. In the Antiterrorism and Effective Death Penalty Act of 1996, Congress amended section 845(a)(1) to add the phrase "and which pertain to safety." *See* Pub. L. No. 104-132, § 605(1)(B), 110 Stat. 1214, 1290 (1996). Read literally, therefore, the exemption applies only to any "aspect of the transportation of explosive *materials* . . . [(a)] which are regulated by the Department of Transportation . . . and [(b)] which pertain to safety." While it might make sense to refer to "explosive materials" that "are" regulated by DoT, it is not at all clear that there is any content to the category of "explosive materials" "which pertain to safety." Moreover, because the exemption is phrased conjunctively, the exemption would apply only if the materials are both regulated by DoT *and* pertain to safety. Because the latter category is either empty or vanishingly small, to read section 845(a)(1) according to its literal terms is to drain the 1996 amendment to that section of virtually all meaning.

We cannot believe that Congress intended either of these absurd results.[4] *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70–71 (1994). Instead, we believe that the incoherence of the exemption as written is likely the result of a mere scrivener's error. In this case, we believe the error was Congress's failure to include an "s" at the end of the word "aspect."[5] Thus, we believe that the exemp-

---

[4] It is worth noting that the two reported decisions that have construed section 845(a)(1) such that the operative provision is DoT's regulation of the explosive materials were decided before the 1996 amendment to the statute. These courts were therefore not faced with the construction of the "and which pertain to safety" language. *See United States v. Illingworth*, 489 F.2d 264, 265 (10th Cir. 1973); *United States* v. *Petrykievicz*, 809 F. Supp. 794, 797 (W.D. Wash. 1992).

[5] Alternatively, the statutory confusion could be the result of a "conjugator's error"—that is, the draftsman of the original exemption may have incorrectly conjugated the verb "to be," choosing the plural form "are" rather than the singular "is" to correspond to the singular subject "aspect." Indeed, ATF's regulations implementing this section have interpreted the statutory provision this way:

> Except for the [prohibitions relating to unmarked plastic explosives and reporting of plastic explosives], this part does not apply to:
>
> (1) Any aspect of the transportation of explosive materials via railroad, water, highway, or air which is regulated by the U.S. Department of Transportation and its agencies, and which pertains to safety.

27 C.F.R. § 55.141(a) (2002) (emphasis added). We recognize that this reading implies that Congress perpetuated its original error when it added the phrase "and which pertain to safety." When Congress amended the statute in 1996, it may simply have followed the verb form chosen by the original draftsman. We note in this regard that the House version of the bill contained the word "pertains," H.R. Rep. No. 104-383, at 19 (1995) (setting forth House version), whereas the version adopted at

tion is more properly read to say that certain provisions of chapter 40, including section 842(i), as amended, "shall not apply to . . . any *aspects* of the transportation of explosive materials via railroad, water, highway, or air which are regulated by the United States Department of Transportation and agencies thereof, and which pertain to safety."

Read this way, the exemption focuses on the *aspects* of the transportation of explosive materials that DoT regulates rather than on the *materials* themselves. This is essentially the reading of section 845(a)(1) adopted by the court in *United States v. Scharstein*, 531 F. Supp. 460, 466 (E.D. Ky. 1982) ("The key word in construing the meaning of § 845 is the word 'aspect.'"). In addition, the only legislative history on the exemption supports the construction of the statute that focuses on the "aspects" of transportation, rather than on the "materials" transported. *See* H.R. Rep. No. 91-1549, at 4047 (1970) ("This chapter is not meant to affect *aspects* of the transportation of explosive materials regulated by the Department of Transportation.") (emphasis added). This reading is further supported by the 1996 amendment, which—because there is no meaning to a category of "explosive materials . . . which pertain to safety"—makes clear that Congress was referring to the aspects of transportation that are regulated, not the explosive materials themselves. Finally, although the affected agencies did not address this issue specifically in their submissions to this Office, they seem to agree that the focus of the section 845(a)(1) exemption is on the "aspects" of transportation that are regulated. *See* DoT Submission, Tab 1, at 5 ("It is these 'aspects' of transportation in commerce that [Research and Special Programs Administration] believes are excepted from the prohibitions in 18 U.S.C. § 842(a)–(k)."); *id.*, Tab 2, at 4 ("From a legal point of view, the critical issue is the meaning of the term "any aspect" in § 845(a)"); ATF Submission at 4 ("the exception in section 845(a)(1) applies only to those aspects of transportation relating to safety"); *id.* at 13 ("Section 845(a)(1) refers to any aspect of transportation 'regulated by' DoT 'which pertain to safety.'").

Thus, we believe that section 845(a)(1) is best read to say that certain provisions of chapter 40, including section 842(i), as amended, "shall not apply to . . . any *aspects* of the transportation of explosive materials via railroad, water, highway, or air which are regulated by the United States Department of Transportation and agencies thereof, and which pertain to safety." Accordingly, the exemption is triggered only when (1) DoT has regulated relevant "aspects of the transportation of explosive materials," and when (2) those regulated aspects "pertain to safety." We address these requirements in reverse order.

---

conference contained the word "pertain," H.R. Conf. Rep. No. 104-518, at 79 (1996). Whether the error is a "scrivener's" or a "conjugator's" error does not affect our analysis.

## B.

The phrase "and which pertain to safety" was added to section 845(a)(1) by section 605(1)(B) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat 1214, 1290 (1996). ATF argues that "safety" within section 845(a)(1) is limited to safety in the sense of preventing accidents. *See* ATF Submission at 11 ("DoT statutes are designed to regulate the safe transportation of hazardous materials, such as explosives, while in transit and in commerce. These statutes . . . primarily supplement State regulatory schemes to promote highway safety. This is reflected in statutes requiring drivers to be knowledgeable and qualified to operate motor vehicles, testing, certification, and so forth."); *id.* (the risk DoT regulates is the "general safety and fitness of the operator"). DoT contends that "safety" should be read to include security, i.e., national security concerns. *See* DoT Submission, Tab 1, at 1.

We believe that the term "safety" as it is used in section 845(a)(1) includes security concerns, including the risk to national security posed by drivers transporting explosives. DoT's jurisdiction extends to both safety and security. Congress has authorized the Secretary of Transportation to "prescribe regulations for the safe transportation, *including security*, of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103(b) (emphasis added). The clause "including security" was added by section 1711(a) of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2319 (2002). The use of the word "including" indicates that Congress believed security is an element of safety.

Moreover, Congress has already assigned DoT a role in assessing the national security risk posed by individuals transporting hazardous materials. In section 1012 of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 271, 397 (2001), Congress amended portions of the statutes governing the issuance of licenses for those who transport hazardous materials by motor vehicles. Specifically, Congress prohibited states from issuing commercial driver's licenses for transporting hazardous materials ("hazmat" licenses) "unless the Secretary of Transportation has first determined . . . that the individual does not pose a *security risk* warranting denial of the license." 49 U.S.C. § 5103a(a)(1) (Supp. I 2002) (emphasis added). Under this provision, the Attorney General conducts the background check, *id.* § 5103a(c), but the Secretary of Transportation makes the determination regarding the security risk, *id.* § 5103a(a)(1). Although DoT, through the Transportation Security Administration ("TSA"), has not yet implemented this statutory scheme, *see* DoT Submission, Tab 6, at 1, the grant of authority from Congress is powerful evidence that Congress believes DoT has a role to play with respect to assessing risks to national security. Accordingly, we believe that a DoT regulation addressing the security aspects of the transportation of explosive materials, including an assessment of the risk to national security posed by drivers, could be one "which pertain[s] to safety" within the meaning of section 845(a)(1).

**C.**

We next address what is meant by the clause "aspect[s] of the transportation of explosive materials . . . which are regulated by the United States Department of Transportation." This clause raises two interpretive questions: What is meant by "*aspect[s]* of transportation"?; and what is meant by "which *are regulated* by" DoT? We again address these questions in reverse order.

Section 845(a)(1) states that the provisions of chapter 40 shall not apply to "any aspect[s] of the transportation of explosive materials . . . which *are regulated* by" DoT "and which pertain to safety." This statutory language admits of two possible readings. The first, and we believe the most natural, reading is to say that the provisions of chapter 40 do not apply to "any aspect[s] of the transportation of explosive materials which *are*" in fact, presently being "regulated by" DoT. That is, for the exemption to apply, DoT must have issued regulations addressing the relevant "aspect[s]" of transportation. But there is another possible reading. The exemption might be read to apply to "any aspect[s]" of the safe transportation of explosive materials which are within DoT's regulatory jurisdiction, even if DoT has not actually exercised its jurisdiction by regulating in the area. Thus, "aspect[s] . . . which are regulated" could be read to mean "aspect[s] which are within DoT's regulatory competence." As discussed previously, we believe that the safe and secure transportation of explosive materials lies within DoT's regulatory competence. Thus, if the latter interpretation of the statutory language were correct, DoT's regulatory jurisdiction over the safe and secure commercial transportation of hazardous materials would be essentially exclusive; even without actually regulating *any* aspect of the safe transportation of hazardous materials, DoT would have pre-empted the field. We are reluctant to accept this broad interpretation of section 845(a)(1). To accept it would be to eviscerate the criminal provisions of chapter 40 and the Attorney General's prosecutorial and regulatory authority, *see* 18 U.S.C. § 847,[6] to enforce those provisions, at least as they apply to commercial transportation. Such a construction would run afoul of the "well established [principle] that when two regulatory systems are applicable to a certain subject matter, they are to be reconciled and, to the extent possible, both given effect." *Pennsylvania v. Interstate Commerce Comm'n*, 561 F.2d 278, 292 (D.C. Cir. 1977); *accord FTC v. Ken Roberts Co.*, 276 F.3d 583, 593 (D.C. Cir. 2001) ("Because we live in an 'age of overlapping and concurring regulatory jurisdiction,' a court must proceed with the utmost caution before concluding that one agency may not regulate merely because another may.") (internal citations omitted). Although Congress may certainly grant one agency exclusive jurisdiction over an area of federal regulation, we are loath to infer such a sweeping grant

---

[6] *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1111(c)(1), 116 Stat. 2135, 2275 (2002) (transferring the authorities of the Secretary of Treasury with regard to ATF to the Attorney General).

of authority, which here even displaces criminal prosecutorial authority, without a more precise statement from Congress. Accordingly, we believe that the section 845(a)(1) exemption is best read as applying only when DoT has *actually regulated* some aspect of the safe transportation of explosive materials. *Cf. Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235, 241 (2002) (interpreting preemption provision of Occupational Safety and Health Act such that "mere possession by another federal agency of unexercised authority to regulate certain working conditions is insufficient to displace [the Occupational Safety and Health Administration]'s jurisdiction").

Our second interpretive question asks what is meant by the "*aspect[s]*" of the safe transportation of explosives that are regulated by DoT. In interpreting this provision we must ask whether an exemption from criminal liability obtains whenever DoT has actually regulated *any* aspect of the safe transportation of explosive materials or whether the exemption prevails only when DoT has regulated the *particular* aspect of the safe transportation of explosive materials that prompted Congress to enact the criminal statute from which the exemption is sought. We believe that the latter interpretation is the better one.

This reading provides a link between the criminal liability imposed by section 842(i) and the exemption from this liability found in section 845(a)(1). We believe such a link is necessary because it is highly unlikely that Congress would have criminalized a particular aspect of the transportation of explosive materials—here, the threat to security posed by the driver—and then provided a broad exemption from this criminal liability whenever DoT regulates any aspect of the safe transportation of explosive materials, even if the regulated aspect is not one that pertains to the threat Congress addressed in the criminal prohibition. This reading would mean, for example, that if DoT had issued only one regulation pertaining to the safe and secure transport of explosive materials—say, a regulation requiring explosive materials to be locked up at all times during transport to prevent theft— no one, or at least no commercial driver, could be liable for any offense under chapter 40 concerning the transportation of explosives. We believe that this construction reads too much into section 845(a)(1).

Instead, we believe that section 845(a)(1) is more properly construed to provide relief from criminal liability whenever DoT has regulated the *particular aspect* of the safe transport of explosive materials that Congress sought to regulate through criminal liability. That is, section 845(a)(1)'s immunity is limited to situations where an individual is subject to DoT regulations *regarding the activity covered by the criminal provision*. Reading the statute this way ascribes to the exemption a perfectly reasonable purpose: to eliminate wasteful duplication in the enforcement efforts of federal agencies, and to prevent the regulated community from having to comply with two sets of potentially conflicting regulations concerning the same aspect of transportation. This reading also ensures that every person transporting explosives will be covered by one of the two alternative federal schemes (but not both): the criminal prohibition contained in section 842(i) or the regulations issued

by DoT. The alternative reading, by contrast, would ascribe to the statute the startling purpose of creating a blanket immunity from prosecution for *any* criminal explosives offense regarding the transportation of explosives, even if DoT had regulated only certain limited, unrelated, aspects of the safe transportation of explosives. We are reluctant to ascribe to Congress such an unusual intent without more explicit direction. We therefore conclude that the section 845(a)(1) exemption is available only where DoT has regulated *the particular aspect* of the transportation of explosive materials with which Congress was concerned in passing the criminal provision from which relief is sought.

While not directly binding on the question before us, we note that our conclusion is consistent with the conclusion reached by the Supreme Court in *Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235 (2002).[7] In *Chao*, the Court examined a preemption provision contained in the Occupational Safety and Health Act of 1970 ("OSH Act"). The OSH Act, which is enforced by the Occupational Safety and Health Administration ("OSHA"), imposes a duty on covered employers to provide working conditions that "'are free from recognized hazards that are causing or are likely to cause death or serious bodily harm'" to their employees, as well as an obligation to comply with safety standards promulgated by the Secretary of Labor." *Id.* at 240–41 (quoting 29 U.S.C. § 654(a)(1)). However, the Act contains the following preemption provision: "[n]othing in this [Act] shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health." 29 U.S.C. § 653(b)(1) (2000).

In *Chao*, OSHA had cited a drilling company for violations of the OSH Act that occurred while the company was drilling a well in the territorial waters of Louisiana. The drilling company argued that OSHA's jurisdiction was preempted by section 653(b)(1) of title 29 because the Coast Guard had regulated some aspects of occupational safety and health on vessels in navigable waters. The Court disagreed, holding that "minimal exercise of some authority over certain conditions on vessels" would not trigger the preemption provision. *Chao*, 534 U.S. at 241. Instead, the Court held that OSHA's jurisdiction was preempted only if the working conditions at issue in a given case were the "particular ones 'with respect to which' another federal agency has regulated." *Id.* (quoting 29 U.S.C. § 653(b)(1)).

*Chao*, of course, is not dispositive in the instant case because the language of the preemption provision in section 653(b)(1) of title 29 differs from the language

---

[7] Indeed, DoT's Federal Motor Carrier Safety Administration has conceded this point. DoT Submission, Tab 2, at 4 ("The term 'any aspect' could also mean that ATF has no jurisdiction over 'any aspect' of the safe transportation of explosives regulated by DoT, but may apply the prohibitions of Sec. 1123 that are not covered by 'any aspect' of the DoT program. Since DoT does not directly regulate drivers by nationality, this would allow ATF to enforce the prohibition on aliens. [This] position is consistent with the Supreme Court's decision" in *Chao*).

in section 845(a)(1) of title 18. Yet we do not believe that there is a great deal of distance between the statutory language at issue in *Chao* ("[n]othing in this [Act] shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority") and the language at issue here (the provisions of chapter 40 "shall not apply to any aspect[s] of the transportation of explosive materials . . . which are regulated by" DoT). Both, we believe, are best read to suggest congruence between the general statutory requirement and the regulation that purports to preempt it. Moreover, our reading is consistent with the Court's express desire to avoid "large gaps" in the enforcement of the regulatory scheme. *Chao*, 534 U.S. at 245 n.9 (noting that to construe the preemption provision otherwise "would mean that if the Coast Guard regulated marine toilets on [the vessel in question] and nothing more, any OSHA regulation of the vessel would be pre-empted"). This principle applies with particular force in light of Congress's manifest concern with shoring up the nation's defenses after the events of September 11. *See, e.g.*, USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272, 397 (2001); Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

For these reasons, we believe there must be more than an attenuated link between the DoT regulation that seeks to invoke the section 845(a)(1) exemption and the activity prohibited under chapter 40. We believe that the section 845(a)(1) exemption is triggered only when DoT has regulated the *particular* "aspect[s] of the [safe] transportation of explosive materials" that are criminalized by section 842(i), as amended. By passing section 842(i), as amended, Congress identified a presumptive security threat posed by allowing certain categories of persons to transport explosives, and regulated that threat through criminal liability, subject to relief after satisfactory completion of a background check. It would eviscerate this statutory scheme to conclude that a regulation completely unrelated to the prohibition would provide immunity from criminal liability under this section. Because section 842(i) criminalizes the transportation of explosives by specified categories of persons, we believe that the section 845(a)(1) exemption applies only if DoT has, in fact, regulated the security risk posed by the transportation of explosives by these categories of persons.

### D.

We next address whether DoT has regulated the security risk posed by the transportation of explosives by the categories of persons listed in section 842(i). The only specific regulation that DoT points to in this regard is that in 1988 DoT "determined that commercial drivers' license[s] issued by Canadian Provinces and Territories in conformity with the Canadian National Safety Code are in accordance with the standards of [49 C.F.R. Part 383]." DoT Submission, Tab 2, at 2 (quoting 49 C.F.R. § 383.23(b) n.1). Part 383 is entitled "Commercial driver's license standards; requirements and penalties." But nothing in that part regulates

the security threat posed by a particular driver. Moreover, DoT's determination in 1988 that Canadian commercial drivers' licenses satisfied DoT regulations pre-dated the requirement in the USA PATRIOT Act that domestic hazmat licenses be issued only after DoT has determined that the applicant does not pose a security risk. *See supra* p. 43 (discussing section 5103a(a)(1) of title 49, as amended, which prohibits states from issuing commercial driver's licenses for transporting hazardous materials "unless the Secretary of Transportation has first deter-mined . . . that the individual does not pose a security risk warranting denial of the license"). Thus, although DoT determined in 1988 that Canadian commercial drivers' licenses satisfied DoT regulations, that determination did not include an assessment of the security review, if any, conducted by Canadian provinces because there was no U.S. equivalent at the time.

DoT does not currently perform any such assessment of Canadian hazmat licensees,[8] nor has DoT officially endorsed any Canadian background check system that may already be in place.[9] Thus, we conclude that DoT has not regulated the security risk posed by the transportation of explosives by the relevant category of persons in section 842(i)—here, aliens.[10]

Accordingly, we do not believe that the regulations cited by DoT have actually regulated the "aspect of the transportation of explosive materials" that is criminal-ized by section 842(i), as amended, in a way that would allow the Canadian truck

---

[8] The provisions of the USA PATRIOT Act that require DoT to perform background checks before a person may receive a license to transport hazardous materials, *see* 49 U.S.C. § 5103a (Supp. I 2002), are triggered only by an individual's application for a license issued by a U.S. state. They do not apply to persons holding Canadian hazmat licenses; nor may persons holding Canadian licenses apply for licenses issued by U.S. states. *See* 49 C.F.R. § 383.21 & 383.23(b) n.1 (2001). We are informed that DoT is working with the Canadian government to establish a procedure regarding background checks for Canadian hazmat licensees, but such a procedure is not currently in place. *See* DoT Submission, Tab 7, at 1.

[9] We are informed, for example, that Quebec requires all drivers (Canadian and U.S.) transporting explosives in Quebec to obtain a general explosives permit, and that this permitting process includes a "criminal background check and security review" of the driver. DoT Submission, Tab 2, at 3. DoT has not indicated that any other Canadian province conducts a similar security review; nor has DoT determined that the security review conducted by Quebec is acceptable to DoT or similar to that which will be performed under section 5103a. *See* DoT Submission, Tab 7, at 1 ("Transport Canada has . . . proposed early and effective equivalency programs for background checks of drivers, but [has] not implemented the programs because [it has] not yet received an official USG endorsement.").

[10] This is not to say, however, that a DoT regulation that would trigger the section 845(a)(1) exemp-tion would have to be identical to the scheme put in place by Congress in section 845(b). To construct a hypothetical, we imagine that, before the passage of the USA PATRIOT Act, DoT could have addressed the security risk posed by felons, *see* 18 U.S.C. § 842(i)(1), by promulgating a regulation that allowed certain types of non-violent felons to possess hazmat licenses without going through a background check. This regulation would not have been identical to the scheme Congress created for dealing with the security risk posed by felons in section 845(b) of title 18, but may well have been a sufficient regulation to allow a non-violent felon to take advantage of the exemption contained in section 845(a)(1).

drivers at issue here to take advantage of the section 845(a)(1) exemption from criminal liability.[11]

## II.

We recognize that our resolution of the question presented to us is not free from doubt. To invoke an over-used, but apt phrase, the statute is "far from a model of clarity." Our resolution rests, at bottom, on our conviction that to read the statute in the way suggested by DoT would create an enormous gap in the enforcement of newly enacted national security provisions, which we cannot believe Congress intended to do. Yet two canons of statutory construction—the rule of lenity and the *Charming Betsy* canon—tug against our conclusion. Although we believe that, ultimately, neither of these canons compels a result contrary to the conclusion we have reached, we cannot say with certainty that a court reviewing an indictment or conviction under section 842(i) would agree.

## A.

The rule of lenity provides that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347 (1971) (internal quotations and citation omitted). Congress has certainly not done that here. Thus, we can understand how a court might reach the conclusion that the rule of lenity leads to the conclusion that the statute must be construed in the way that most narrows the scope of potential criminal liability. And, indeed, one court has done just that. *See Petrykievicz*, 809 F. Supp. at 799 (invoking the rule of lenity to conclude that the focus of section 845(a)(1) must be on the *materials* regulated rather than on the *aspects* of transportation regulated). Yet the "rule of lenity applies only if, after seizing everything from which aid can be derived . . . we can make no more than a guess as to what Congress intended." *Holloway v.*

---

[11] The section 845(a)(1) exemption applies to "any aspect of the *transportation* of explosive materials via railroad, water, highway, or air which are regulated by" DoT "and which pertain to safety." (Emphasis added.) ATF hints at the argument that regardless of the reach of section 845(a)(1) with respect to *transporting* explosives, section 842(i) still prohibits aliens and other prohibited persons from *possessing* explosives, even if they are doing so only as a part of transportation. *See* ATF Submission at 5, 10–12. Thus, if a driver could be said to be simultaneously transporting and possessing explosives within the meaning of section 842(i), ATF might argue that it could still prosecute the driver for the *possession* of explosives, even if DoT had actually issued a regulation that would trigger the *transportation* exemption under section 845(a)(1). Although we do not resolve the question here, we do note that ATF's assertion of jurisdiction in such a case would severely limit, and arguably eviscerate, section 845(a)(1) because that provision would immunize only those individuals who were transporting but *not* simultaneously possessing explosives. We do not know whether such a class of persons exists, and decline to speculate without further input from the affected agencies.

*United States*, 526 U.S. 1, 12 n.14 (1999) (internal quotations and citation omitted); *accord Staples v. United States*, 511 U.S. 600, 619 n.17 (1994) (ambiguity must be "grievous" for rule of lenity to apply); *Johnson v. United States*, 529 U.S. 694, 712 n.13 (2000) (Scalia, J., dissenting) ("[l]enity applies only when the equipoise of competing reasons cannot otherwise be resolved"). Although section 845(a)(1) poses interpretive difficulties, we cannot conclude that any ambiguity is "grievous," or that our interpretation of the statute is "a guess as to what Congress intended." Therefore, we believe the rule of lenity does not apply.

## B.

[Redacted from original memorandum opinion at the request of the United States Trade Representative.]

## III.

For the reasons set forth above, we conclude that DoT possesses the authority to issue a regulation that, under section 845(a)(1), would exempt Canadian truck drivers from criminal liability under section 842(i). We further conclude, however, that DoT has not issued such a regulation and therefore section 842(i) liability would attach to a Canadian truck driver transporting explosives in the United States.

JAY S. BYBEE
*Assistant Attorney General*
*Office of Legal Counsel*