EMILIO M. GARZA, Circuit Judge,
dissenting:
Because the majority opinion fails to defer to the Secretary of Labor’s (“Secretary”) reasonable interpretations of the ambiguous language of 29 C.F.R. § 1926.1101(h)(1) ‘ and 29 C.F.R. § 1926.1101(k)(9); incorrectly finds that the Ho Ho Ho Express and Houston Fruitland (collectively, “Ho Entities”) are not Erik Ho’s (“Ho”) alter egos; and holds that Ho’s instruction to tap an unmarked pipe was a “serious” rather than “willful” violation of the General Duty Clause, 29 U.S.C. § 654(a)(1), I respectfully dissent.
I
The majority opinion holds that the language of 29 C.F.R. § 1926.1101(h)(1) unambiguously precludes per-employee citations and, thus, affirmed the Commission’s ruling that the regulation does not require an individualized' duty but instead applies to a single course of conduct. The majority opinion also finds that the language of 29 C.F.R. § 1926.1101(k)(9) which the Commission determined addresses a single course of conduct, prohibiting per-employee citations is ambiguous; however, it holds that the Secretary’s interpretation is unreasonable and, hence, that the per-employee citations are prohibited. I disagree. The language of both provisions is ambiguous, and the majority opinion fails to defer to the Secretary’s reasonable interpretation allowing per-employee citations.
The penalty provisions of the OSH Act permit penalties on a per-violation basis. Kaspar Wire Works, Inc. v. Sec’y of Labor, 268 F.3d 1123, 1130 (D.C.Cir.2001). The question, however, is what constitutes a unit of violation. “The test of whether the Act and the cited regulation permits multiple or single units of prosecution is whether they prohibit individual acts, or a single course of action.” Sec’y of Labor v. Caterpillar Inc., No. 87-0922, 1993 WL 44416, at *22 (O.S.H.R.C. Feb.5, 1993). An example of a single course of action is the failure to protect the perimeter of a roof. Sec’y of Labor v. Hartford Roofing Co., No. 92-3855, 1995 WL 555498 (O.S.H.R.C. Sept.15, 1995). The failure to erect guardrails on multiple scaffolds, however, may be cited on a per-instance basis. Sec’y of Labor v. Hoffman Constr. Co., No. 4182, 1978 WL 6990 (O.S.H.R.C. Jan.4, 1978). Individual record-keeping violations may *378 be penalized on a per-instance basis. Caterpillar, 1993 WL 44416, at *23. Failure to remove employees from work who were exposed to lead at or above the action level may be cited on a per-employee basis. Sec’y of Labor v. Sanders Lead Co., No. 87-260, 1995 WL 242606, at *3 (O.S.H.R.C. Apr.24, 1995). “It is not the single decision by an employer ..., but the language of the standard that is determinative.” Id.
When the statutory language is not clear, “the Secretary’s interpretation would be entitled to deference given her official duty, specialized expertise, investigatory knowledge and other experience relevant to carrying out the purposes of the Act.” Kaspar Wire Works, Inc., 268 F.3d at 1131. “In situations in which the meaning of [regulatory] language is not free from doubt, the reviewing court should give effect to the [Secretary’s] interpretation so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations.” Martin v. OSHRC, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (internal quotations and citations omitted). This deference is given to the Secretary, not the Commission. Id. at 158, 111 S.Ct. 1171 (“although we hold that a reviewing court may not prefer the reasonable interpretation of the Commission to the reasonable interpretations of the Secretary, we emphasize that the reviewing court should defer to the Secretary only if the Secretary’s interpretation is reasonable”) (emphasis in original). Thus, the inquiry is in two parts: (1) whether the language is ambiguous; and (2) whether the Secretary’s interpretation is reasonable. If so, we must defer to that interpretation.
A
At the time of the violations, 29 C.F.R. § 1926.1101(h)(1) stated, “[t]he employer shall provide respirators, and ensure that they are used.... ” The majority opinion finds that this language unambiguously precludes per-employee citations. The majority finds that, “there is simply no language in the general respirator protection section that suggests the unit of prosecution could be based on each individual employee not receiving a respirator versus the employer’s course of action in failing to provide respirators to his employees as a whole for the Class I asbestos job.” (emphasis added). However, there is also no language in the general respirator section that suggests the section is violated only when the employer does not provide respirators to “employees as a whole.”[1] The majority’s reading also does not comport with the explicit purpose of OSH Act, which is “to assure so far as possible every working man and woman in the Nation safe and healthful working conditions ...” 29 U.S.C. § 651(b) (emphasis added); Chao v. Mallard Bay Drilling, 534 U.S. 235, 245 n. 9, 122 S.Ct. 738, 151 L.Ed.2d 659 (2002). The use of the singular “man” and “woman” suggests a focus on the individual employee. Since the plain language does not specify whether per-employee citations are permitted, the language is ambiguous.
The next step in the inquiry is whether the Secretary’s interpretation is reasonable. It is irrelevant whether the Commission’s interpretation is also reasonable as the discretion is in the Secretary’s hands. Martin, 499 U.S. at 158, 111 S.Ct. 1171.
*379 It is a reasonable interpretation of 29 C.F.R. § 1926.1101(h)(1) to issue per-employee citations. “As long as employees are working in a contaminated environment, the failure to provide each of them with appropriate respirators could constitute a separate and discrete violations [sic].” Hartford Roofing Co., 1995 WL 555498, at *7. Thus, Hartford makes the distinction between the individual act of removing contaminates from the air and the multiple acts of providing respirators. Id. The former is subject to a single citation while the latter is subject to multiple citations. Providing one employee with a respirator does not abate the violation for other employees. Id. The requirement also states that the employer shall “ensure that [the respirators] are used.” 29 C.F.R. § 1926.1101(h)(1). Obviously, ensuring individual usage requires action on a per-employee basis.
The subsections of 29 C.F.R. § 1926.1101(h)(1) also suggest the potential for per-employee citations (or, at the very least, suggest the absurdity of precluding per-employee citations for the general respirator protection section). For instance, employers are required to perform periodic individual face fittings for the respirators. 29 C.F.R. § 1926.1101(h)(4). In addition, employers are required to provide specific types of respirators depending on employee requests. 29 C.F.R. § 1926.1101(h)(4). These requirements are clearly employee specific. The employer cannot provide any respirator; it must conform to the subsections of 29 C.F.R. § 1926.1101(h)(1) in providing employee specific respirators. Thus, the Secretary reasonably interpreted the ambiguous language of 29 C.F.R. § 1926.1101(h)(1) and we must defer to her interpretation.
B
Section 1926.1101(k)(9)(i) states, “[t]he employer shall, at no cost to the employee, institute a training program for all employees ..., and shall ensure their participation in the program.” Section 1926.1101(k)(9)(viii) states, “[t]he training program shall be conducted in a manner that the employee is able to understand.” The majority opinion finds that, while the language is ambiguous, the Secretary’s interpretation allowing per-employee citations is unreasonable. The majority opinion reasons that one training program could have abated the violation if all eleven employees had attended and understood. Ho, of course, did not conduct a training program for any of his employees. While the majority provides a reasonable interpretation of the training requirement, it fails to show how the Secretary’s interpretation is unreasonable.
The majority opinion relies on Sec’y of Labor v. Andrew Catapano Enters., Inc., Nos. 90-0050, 90-0189, 90-0190, 90-0191, 90-0192, 90-0193, 90-0771, 90-0772, 91-0026, 1996 WL 559899 (O.S.H.R.C. Sept.30, 1996) for the proposition that only “employee-specific unique circumstances” merit citations “based on each failure to train an individual employee.” This reading misstates the holding in Catapano. The Commission in Catapano found “[t]he language of the standard ‘[t]he employer shall instruct each employee’ clearly may be read to permit the Secretary to cite separate violations based on the failures to train individual employees.” Id. at *5. The Commission did not vacate the multiple citations on a per-employee basis but on a per-inspection basis. The Commission reasoned that each new inspection could not result in a separate citation when “the employees did not change, and the working conditions and applicable regulations did not change.” Id.
Even the majority’s “employee-specific unique circumstances” standard is met by *380 the failure to train employees and ensure that the employees understand the training. Reich v. Arcadian Corp., 110 F.3d 1192, 1198-99 (5th Cir.1997) (“An employee could be a unit of violation, however, only if the regulated condition or practice iS' unique to the employee (i.e., failure to train or remove a worker).”). While the single action of a group training session could have instructed the eleven workers at once, ensuring that each employee understood the training is employee specific. Thus, the majority has failed to show how the Secretary’s interpretation is unreasonable. Accordingly, I would reverse the Commission’s determination that per-employee citations are prohibited.
II
The majority opinion affirms the Commission’s finding that the Ho Entities are not alter egos of Ho because they “maintained separate corporate identities, tax identities, bank accounts, and legitimate business operations.” In determining whether a corporation is an alter ego of an individual for reverse corporate piercing purposes, courts consider the totality of the circumstances, including “the total dealings of the corporation and the individual, the amount of financial interest the individual has in the corporation, the ownership and the control that the individual maintains over the corporation, and whether the corporation has been used for personal purposes.” Estate of Lisle v. Comm’r of Internal Revenue, 341 F.3d 364, 375-76 (5th Cir.2003).
Courts nééd to look beyond formalities and records to determine the true economic relationship between the entities. United States v. Jon-T Chems., Inc. 768 F.2d 686, 693 (5th Cir.1985) (finding that “the courts are concerned with reality and not form, with how the corporation operated and the individual defendant’s relationship to that operation”). In Jorir-T Chemicals, the court dismissed the formality of recording paid expenses as loans because “whenever [one company] could not pay its bills, [the other company] did so by writing a check.” Id. at 695. The companies shared an accounting department and “funds were transferred between the different [companies’] accounts in order to cover deficiencies.” Id. That is precisely what happened here. The Ho Entities shared one bookkeeper who notified Ho when one account was deficient; Ho would then transfer the funds to cover the deficiency of the other company.
The evidence shows that Ho has complete control over the Ho Entities. Ho owns two-thirds of the stock and is president of both companies. The Ho Entities advanced the vast majority of Ho’s personal investment of the property.[2] In addition, the Ho Entities provided funds for the workers’ wages and for supplies and equipment. Converting a hospital into residential units has nothing to do with the Ho Entities’ business purposes of transportation and fruit sales. While the frequent transfers among the Ho Entities and Ho were documented as debts, there were no loan documents, no interest due, no schedule for repayment and no representation of debt repayment. Accordingly, I believe that substantial evidence supports a finding that the Ho Entities were Ho’s alter egos and, thus, would vacate the Commission’s order vacating the citations against the Ho Entities.
Ill
The majority opinion affirmed the Commission’s finding that the violation of the General Duty Clause was “serious” instead of “willful,” reasoning that there was no evidence compelling a willful finding for *381 the specific instruction to tap the unmarked valve. The Commission’s legal conclusions may be set aside if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. MICA Corp. v. OSHRC, 295 F.3d 447 (5th Cir.2002). The General Duty Clause of the OSH Act requires an employer to provide “each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.” 29 U.S.C. § 654(a)(1).
“A violation is willful if it is committed with intentional, knowing or voluntary disregard for the requirements of the Occupational Safety and Health Act.” Hartford Roofing Co., 1995 WL 555498, at *2. See also AJP Constr., Inc. v. Sec’y of Labor, 357 F.3d 70, 74 (D.C.Cir.2004)(finding that “a willful violation of the Act constitutes an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act’s requirements”). Ho conceded that tapping into an unmarked pipe at a demolition site was a “recognized hazard.” Instructing his employees to tap an unmarked pipe a “recognized hazard” evidences a plain indifference to the General Duty Clause. Even without the benefit of hindsight, it is self-evident that tapping an unmarked pipe is “likely to cause death or serious physical harm.” Therefore, the Commission abused its discretion by finding Ho’s violation of the General Duty Clause “serious” instead of “willful.” Accordingly, I would vacate the Commission’s order reducing the General Duty Clause violation to serious from willful.
For the above stated reasons, I respectfully dissent.

. Such an aggregate reading of 29 C.F.R. § 1926.1101(h)(1) could be read to mean that when an employer provides most but not all of its employees with respirators, it is still not in violation of the general respirator protection section.

. An undisclosed "outside source” and two other corporations, one of which Ho owns, contributed the rest. These sources are not involved in the OSHA proceedings.