**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ARMANDO ORDONEZ-NAVARRETE,

    Defendant-Appellant.

No. 05-2058
(D.C. No. CR-04-1160-JH)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **McWILLIAMS**, **BALDOCK**, and **BRORBY**, Senior Circuit Judges.[**]

On June 18, 2004, Armando Ordonez-Navarrete, (the defendant) was charged in a

Criminal Information filed in the United States District Court for the District of New

Mexico as follows:

On or about the 28th day of April, 2004, the defendant,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Armando Ordonez-Navarrete, was found in Luna County, the State and District of New Mexico, contrary to law in that the defendant had been deported, excluded and removed and departed the United States on or about September 25, 2003, while an order of exclusion, deportation and removal was outstanding and the said defendant had not obtained the consent of the Attorney General of the United States or his successor, the Secretary for Homeland Security, pursuant to 6 U.S.C. §§ 202(3), 202(4) and 557, for reapplication by the defendant for admission into the United States.

In violation of 8 U.S.C. § 1326(a)(1) and (2).

On the same date that the Criminal Information was filed, the defendant filed a "Waiver of Indictment" in which he waived prosecution by indictment and agreed that "the proceeding may be by information instead of by indictment." At that time he also entered a guilty plea, without a plea agreement, to the crime charged in the Criminal Information.

The Pre-Sentence Report (PSR) calculated defendant's total offense level to be 21. In so doing, the PSR raised defendant's base offense level of 8 by 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because of defendant's conviction on August 17, 1999, for Third Degree Assault in Weld County, Colorado. In connection with that conviction, the PSR contained the following information:

The defendant waived counsel and appeared pro se. Court records indicate the defendant was arrested for the above-captioned offense by officers of the Evans Police Department, following a physical altercation with his wife, Yolanda Gallegos. During the incident, the defendant slapped Ms. Gallegos in the face with an open hand and pushed her into a wall after accusing her of seeing other men. On August 17,

1999, the defendant pleaded guilty to Third Degree Assault and he was placed on probation for a period of two years with

the special conditions that he not return to the United States illegally and that he not have contact with the victim until authorized by the probation officer. Probation revocation proceedings were initiated in September 1999 based on the defendant's failure to complete a domestic violence assessment/treatment and pay courts fines and fees. On September 10, 2001, the defendant admitted to violating his probation and he was sentenced to 45 days work release. On December 10, 2002, the defendant's sentence was modified and he was ordered to serve 45 straight days in jail.

After raising defendant's base offense level from 8 to 24, the PSR then reduced that level by three levels, to 21, for defendant's acceptance of responsibility. The adjusted offense level of 21, coupled with defendant's criminal history category of III, set his guideline range at 46 to 57 months imprisonment. The district court then sentenced defendant to 46 months imprisonment.

Conviction under 8 U.S.C. § 1326(a)(1) and (2), to which charge the defendant in the instant case pled guilty, provides for a term of imprisonment for not more than two years. However, 8 U.S.C. § 1326(b)(1) states that not withstanding 8 U.S.C. § 1326(a), an alien whose removal was subsequent to a felony (other than an aggravated felony) shall be imprisoned for not more than ten years, and 8 U.S.C. § 1326 (b)(2) provides that such an alien whose removal was subsequent to a conviction for an aggravated felony shall be imprisoned for not more than 20 years. At sentencing, the district court held that the statutory maximum for the present case was ten years, as provided for in 8 USC § 1326(b)(1).

Counsel argues in this Court, as he did in the district court, that the statutory maximum imprisonment to which defendant could be sentenced under 8 U.S.C. § 1326(a) is two years, and that, accordingly, defendant's sentence of 46 months imprisonment should be vacated, and the case remanded to the district court for re-sentencing, with directions that the term of imprisonment be no more than two years. The government's position is that 8 U.S.C. § 1326(a) does not apply to the instant case because of defendant's prior conviction in Weld County for Third Degree Assault, and that, under 8 U.S.C. § 1326(b)(1), the statutory maximum term of imprisonment for his conviction in Weld County of Third Degree Assault is 10 years.

Colorado Revised Statue §18-3-204 provides as follows:

> A person commits the crime of assault in the third degree if the person knowingly or recklessly causes bodily injury to another person or with criminal negligence the person causes bodily injury to another person by means of a deadly weapon. Assault in the third degree is a class 1 misdemeanor and is an extraordinary risk crime that is subject to the modified sentencing range specified in section 18-1.3-501 (3).

Colo. Rev. Stat. § 18-1.3-501 states that the maximum sentence for one convicted of a class 1 misdemeanor is 18 months imprisonment.

As stated, the defendant claims that his prior conviction for Third Degree Assault in Weld County was not a felony conviction but was, under Colorado law, only a misdemeanor. The government's position is that, because a class 1 misdemeanor under Colorado law carried a possible sentence of 18 months, i.e., more than one year, it is a

- 4 -

felony for purposes of sentencing under U.S.S.G. § 2L1.2(b)(1)(A).

*United States v. Diaz-Bonilla,* 65 F.3d 875 (10th Cir. 1995) sheds light on the present controversy. In that case, the Colorado statute defined Colorado's Third Degree Assault crime as a misdemeanor, and the maximum penalty therefor was up to two years in the county jail. In that same case, we went on to hold "that for the purpose of § 2L1.2, a felony conviction is defined as a conviction under a statute, state or federal, with a statutory maximum penalty in excess of one year."[1]

We recognize that *Diaz-Bonilla* was interpreting the term "felony" for the purpose of a sentencing guideline enhancement, but believe that its reasoning applies to the question of just what constitutes a felony under 8 U.S.C. § 1326(b)(1). The fact that Colorado classifies a conviction for Third Degree Assault as a Class I misdemeanor is not controlling. What is controlling is that a conviction in Colorado for Third Degree Assault permits a maximum sentence of 18 months imprisonment that controls. So, two years is not the statutory maximum for defendant's conviction. Under 8 U.S.C. § 1326(b) the statutory maximum is up to ten years imprisonment, as the district court held.

\* \* \* \*

As stated, defendant's base offense level of 8 was raised by 16 levels under U.S.S.G. § 2L.1.2(b)(1)(A). In this connection, counsel filed objections to the PSR, stating that though raising defendant's base offense level by 16 levels was proper and

---

[1] It would appear that *Diaz-Bonilla* predated U.S.S.G. § 2L1.2, *Application Note* 2.

correct under § 2L1.2(b)(1)(A), it was at the same time "unfair and harsh," pointing out that the defendant received the same enhancement that, for example, a serial murderer would have received, and that defendant's prior conviction was not as serious as a murder. Counsel then went on to observe that under *United States v. Booker-Fanfan* the guidelines are only advisory, and no longer mandatory, and that the court did not need to make a "downward departure," only a "downward adjustment," to impose a sentence below the guideline minimum of 46 months imprisonment. Accordingly, counsel requested "the court to impose a sentence based on an offense level of 6, rather than 21, to achieve a sentence which is commensurate with his misdemeanor assault conviction and which is therefore 'reasonable,' pursuant to *Booker*."[2]

At sentencing, the district court, in connection with the increase in defendant's base offense level by 16 levels, said that "[B]asically the authority available to me is such, that the 16 level increase is appropriate, unless the court changes the requirement, unless the Tenth Circuit sees fit to find otherwise." Based on that isolated comment the defendant argues in this Court that at sentencing the district court failed to recognize the holding of *Booker-Fanfan* that the guidelines are not mandatory and are only advisory, even though *Booker-Fanfan* had been filed some two months prior to defendant's sentencing. Such is perhaps an overstatement, but the question remains as to whether the

---

[2] The guideline range for an adjusted offense level of 6 and a criminal history category of III is imprisonment for two to six months.

district court, in sentencing, followed the holding in *Booker-Fanfan* that a guideline range was not mandatory, only advisory.

As above stated, the defendant's guideline range was 46 to 57 months imprisonment, which was based on a total offense level of 21 and a criminal history category of III. We note that the district court imposed a sentence of 46 months, the low end of the guideline range. The transcript of the sentencing hearing contains nothing to indicate that the district court considered a sentence <u>below</u> the guideline range, as had been requested. It would seem to us that the better practice where a request has been made for a sentence below the minimum set by the guideline range, that the district court make some explanation of why it is going to sentence within the guideline range and not impose a lesser sentence. And, if, on the contrary, the district court imposes a sentence below the guideline minimum, it should likewise state its reasons therefor. Under the circumstances of the present case, we feel our proper course is to vacate the sentence imposed and remand for consideration of defendant's request that he be sentenced below the guideline range minimum. Then we could, if requested, review for "reasonableness" the court's refusal to make a "downward adjustment," or its grant thereof.

In support of our remand for re-sentencing, *see United States v. Trujillo-Terrazas,* 405 F.3d 814 (10th Cir. 2005). See also, *United States v. Labastida-Segura,* 396 F.3d 1140, 1143 (10th Cir. 2005) where we spoke as follows:

> Here, where it was already at the bottom of the guidelines
> range, to say that the district court would have imposed the

same sentence given the new legal landscape (even after consulting the Sentencing Guidelines in an advisory capacity) places us in the zone of speculation and conjecture–we simply do not know what the district court would have done after hearing from the parties. Though an appellate court may judge whether a district court exercised its discretion (and whether it abused that discretion), it cannot exercise the district court's discretion. *See Martinez v. Potter*, 347 F.2d 1208, 1211-12 (10th Cir. 2003).

Judgment affirmed. However, the case is remanded with directions that the district court vacate its sentence and, after hearing, resentence the defendant in accord with *Booker-Fanfan*.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge