**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JESSE JOHN KREJCAREK,

      Defendant - Appellant.

No. 04-1531

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 04-CR-199-MK)

---

Andrew A. Vogt, Assistant United States Attorney (William J. Leone, United States Attorney, with him on the brief), Denver, Colorado, for the Plaintiff - Appellee.

Michael J. Norton, Englewood, Colorado, for the Defendant - Appellant.

---

Before **TACHA**, Chief Judge, **HOLLOWAY** and **HARTZ**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

Jesse John Krejcarek challenges the classification of his two prior Colorado state third degree assault misdemeanor convictions as "crimes of violence" under the United States Sentencing Guidelines (U.S.S.G.) by the United States District Court for the District of Colorado. The classification resulted in Mr. Krejcarek having an enhanced

base offense level of 26 instead of 20 as would have been the case without the enhancement. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

The underlying facts are essentially undisputed. On May 4, 2004, a two-count indictment was filed in the United States District Court for the District of Colorado, charging Mr. Krejcarek in Count 1 with possession of a firearm by a restrained and prohibited person, in violation of 18 U.S.C. § 922(g)(1), and in Count 2 with possession of an unregistered short-barreled shotgun in violation of 26 U.S.C. § 5861.

On September 7, 2004, pursuant to a plea agreement, Mr. Krejcarek entered a plea of guilty to Count 1 of the indictment premised upon the Government's dismissal of Count 2 of the indictment; the filing by the Government of a motion to award a third point for acceptance of responsibility pursuant to United States Sentencing Guideline § 3E1.1(b); and the filing by the Government of a motion for a downward departure pursuant to 18 U.S.C. § 3553(e) and United States Sentencing Guideline § 5K1.1 for substantial assistance provided to the Government.

On December 6, 2004, the trial court accepted Mr. Krejcarek's plea of guilty as to Count 1 of the indictment and adjudged him guilty of violating 18 U.S.C. § 922(g)(1). The trial court also granted the Government's motion to dismiss Count 2 of the indictment and the Government's motion for a downward departure. However, even though Mr. Krejcarek received a reduction in the offense level calculation due to his acceptance of responsibility and for his substantial assistance, the reduction in offense

level occurred after the trial court had increased Mr. Krejcarek's offense level by 6 points based upon the trial court's classification of his two prior third degree assault misdemeanor convictions under Colorado law as "crimes of violence" under the U.S.S.G. The classification of the two prior convictions as "crimes of violence" resulted in Mr. Krejcarek having an enhanced base offense level of 26[1] rather than 20, as Mr. Krejcarek argued to the trial court should be the case. The trial court overruled Mr. Krejcarek's objections and sentenced him to a term of imprisonment of 62 months under the U.S.S.G. for violating 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Restrained and Prohibited Person).

On appeal, Mr. Krejcarek alleges three errors by the District Court. First, he contends that the crimes involved in the two prior state convictions were not "crimes of violence," as defined by U.S.S.G. § 4B1.2(a), and that the trial court erred by classifying them as such. Second, he contends that the two prior third degree assault misdemeanor convictions should not have been used to enhance his base offense level because the pleas to the two misdemeanors were pursuant to a streamlined program in El Paso County, Colorado, known as the FAST TRACK program and he did not have the assistance of an

---

[1] Additionally, the court granted motions by the Government for a three point downward adjustment in offense level pursuant to U.S.S.G. § 3E1.1(b) (Acceptance of Responsibility) and for a downward departure of 32 percent from the bottom of the otherwise applicable guideline range pursuant to U.S.S.G. § 5K1.1 (Substantial Assistance to Authorities). Accordingly, the court found the total offense level to be 23 and defendant's undisputed criminal history category to be VI, resulting in a guideline range of 92 to 115 months. However, the guideline range became 62 to 78 months after the court applied the 32 percent downward departure and the court imposed a sentence of 62 months of imprisonment.

attorney when he agreed to plead guilty to either of the two misdemeanor convictions. Thus he argues that his pleas of guilty were not voluntary and intelligent choices by him. Third, he contends that the district court committed *Booker*[2] error by using the two prior state convictions to enhance his sentence. We address each of these arguments in turn.

## II. DISCUSSION

### 1. Colorado third degree assault misdemeanor as a "crime of violence"

Mr. Krejcarek contests the applicability of § 2K2.1(a)(1)[3] of the Guidelines because, according to him, the offenses of which he was convicted are not crimes of violence as defined by U.S.S.G. § 4B1.2(a). However, he does not contest that the firearm involved in his offense was a sawed-off (i.e., short-barreled) shotgun of dimensions which are prohibited under 26 U.S.C. §§ 5845(a) and 5861. He also does not contest that his two convictions for third degree assault in Colorado fall within the definition of "felony conviction" (i.e., "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed").[4] *See* U.S.S.G. § 2K2.1, Comment. n. 5.

---

[2] *See United States v. Booker,* 125 S. Ct. 738 (2005).

[3] Under § 2K2.1(a)(1), the base offense level is 26 "if the offense involved a firearm described in 26 U.S.C. § 5845 (a) . . . and the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence . . . ." U.S.S.G. § 2K2.1(a)(1).

[4] Although third degree assault in Colorado is classified as a "class 1 misdemeanor," the penalty upon conviction for that crime is imprisonment for not more

-4-

Whether a statute defines a "crime of violence" for purposes of the Guidelines is a question of statutory construction, which this Court reviews *de novo*. *United States v. Vigil*, 334 F.3d 1215, 1218 (10th Cir. 2001) (citing *United States v. Riggans*, 254 F.3d 1200, 1203 (10th Cir.), cert. denied, 534 U.S. 932 (2001); *United States v. Spring*, 80 F.3d 1450, 1463 (10th Cir. 1996)). U.S.S.G. § 4B1.2(a) defines "crime of violence" as follows:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

In determining whether a state offense constitutes a crime of violence for purposes of the Guidelines, we "generally consider only the statutory elements of the crime." *Vigil*, 334 F.3d at 1217 (citing *United States v. Dwyer*, 245 F.3d 1168, 1171 (10th Cir. 2001)). A "categorical" approach is employed that "omits consideration of the particular facts of the case." *United States v. Munro*, 394 F.3d 865, 870 (10th Cir.) (quoting *Vigil*, 334 F.3d at 1218), *cert. denied*, 544 U.S. 1009 (2005); *Taylor v. United States*, 495 U.S. 575, 600-02 (1990) (determining whether burglary constitutes a predicate crime of violence under 18 U.S.C. § 924(e) "mandates a formal categorical approach, looking only to the

---

than two years. 18-3-204 and 18-1-106, Colorado Revised Statutes.

statutory definitions of the prior offenses, and not to the particular facts underlying those convictions"). *See also* U.S.S.G. § 4B1.2, Comment. n. 1.

However, if the statute's language "is ambiguous or broad enough to encompass both violent and nonviolent crimes, a court may look beyond the statute to certain records, such as "the terms of the charging document, the terms of a plea agreement or transcript of a colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." *Shepard v. United States*, 125 S. Ct. 1254, 1263 (2005); *see also Vigil*, 334 F.3d at 1218; *United States v. Hernandez-Rodriguez*, 388 F.3d 779, 783 (10th Cir., 2004); *United States v. Smith*, 10 F.3d 724, 734 (10th Cir. 1993); *United States v. Asberry*, 394 F.3d 712, 715 (9th Cir. 2005).

In the instant case, Mr. Krejcarek was twice convicted of third degree assault in violation of 18-3-204, Colorado Revised Statutes, which provides in pertinent part, "a person commits the crime of assault in the third degree if he knowingly or recklessly causes bodily injury to another person . . . ." Bodily injury is defined in the Colorado Criminal Code as "physical pain, illness, or any impairment of physical or mental condition." Colo. Rev. Stat. § 18-1-901. According to the Colorado Supreme Court, the statutory definition of bodily injury encompasses any non-trifling injury that involves "at least some physical pain, illness or physical or mental impairment, however slight . . ." *People v. Hines*, 572 P.2d 467, 470, 194 Colo. 284 (Colo. 1978) (en banc).

Mr. Krejcarek argues that the facts of this case do not show that his prior

convictions were for acts of violence. He also contends that the prior convictions did not involve the "intentional use of force" by him. *See* Aplt. Br. at 18. However, this court has held that a Colorado third degree assault is categorically a crime of violence under U.S.S.G. § 4B1.2(a). *See United States v. Paxton,* 422 F.3d 1203 (10th Cir. 2005). As this court noted in *Paxton*, under the second prong of U.S.S.G. § 4B1.2(a), a prior conviction is also for a crime of violence if it involves conduct that "presents a serious potential risk of physical injury to another." *Paxton* at 1207 (citing U.S.S.G. § 4B1.2(a)(2)). Thus, the inquiry under this prong concerns the likelihood that the conduct necessary for conviction under the statute may cause physical harm to another.

> The statute speaks in terms of probability--a "risk"--not certainty. Risk is by definition probable not certain; hence potential rather than actual. Thus, physical injury need not be a certainty for a crime to pose a serious risk of physical injury. Accordingly, the possibility that a crime may be completed without injury is irrelevant to the determination of whether it constitutes a crime of violence within the meaning of § 4B1.2.

*Paxton* at 1206 (quoting *United States v. Vigil*, 334 F.3d 1215, 1223 (10th Cir. 2003)) (internal citations and quotation marks omitted).

Based on the Colorado statute and the Colorado Court's definition of third degree assault, it is clear that a third degree assault presents risk of physical injury. Because the conduct necessary to sustain Mr. Krejcarek's state court convictions presents a serious potential risk of physical injury to another, we hold that his third degree assault misdemeanor convictions for violations of 18-3-204, Colorado Revised Statutes, involve crimes of violence for purposes of U.S.S.G. § 4B1.2 (a)(2). Accordingly, it was not error

for the District Court to classify Mr. Krejcarek's prior Colorado state convictions as "crimes of violence" and to apply U.S.S.G. § 2K2.1 to determine his sentence for the instant offense.[5]

## 2. Waivers of counsel

Mr. Krejcarek also contends that his pleas of guilty to the Colorado state court charges were not voluntary because, according to him, he was denied the right to counsel. Therefore he argues that the District Court erred by classifying his Colorado state court convictions as "crimes of violence." We are not persuaded.

The validity of a waiver of the right to counsel is reviewed *de novo* and the underlying factual findings of the district court are reviewed for clear error. *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002). In considering a collateral attack against a prior conviction, the findings of a district court that the defendant knowingly and intelligently waived his right to counsel in the prior case are reviewed for clear error. *See e.g. Thompson v. Henderson*, 442 F.2d 624 (5th Cir. 1971); *Devine v. Pope*, 423 F.2d 32

---

[5] Mr. Krejcarek also argues that "one of the cases" of third degree assault cannot be considered a crime of violence because (1) the responding officer "charged only harassment in the summons" that was issued, and (2) the third degree assault charge was added later by the district attorney. He speculates that the responding officer consciously decided not to include a charge of third degree assault in the summons "based . . . largely on the fact that he did not believe he had probable cause to charge third degree assault based on the statements from the alleged victim and the witness." Appellant's Opening Brief at 18. Thus, he implies that there is a lack of probable cause to believe that a third degree assault occurred with respect to one of his convictions, despite the eventual filing of that charge and his plea of guilty to that charge.

We are not persuaded by this argument. Nothing in the record suggests error in the District Court's conclusion of law that Mr. Krejcarek's prior convictions were for crimes of violence.

(9th Cir. 1970). In presenting a collateral attack against a prior conviction, the defendant bears the burden of demonstrating the invalidity of the waiver. *United States v. Wicks*, 995 F.2d 964, 977-78 (10th Cir. 1993).

Mr. Krejcarek admits the existence of his two convictions for third degree assault. However, he contends that the waivers of counsel in connection with them were not made voluntarily, knowingly, and intelligently and were therefore invalid even though he acknowledges that he executed written waivers of his right to counsel in both cases.[6] According to him, because he was denied the right to counsel he did not understand the potential collateral consequence that his convictions might produce as crimes of violence for the enhancement of his sentence for a future crime. We conclude that Mr. Krejcarek's argument lacks merit for several reasons.

First, there is no constitutional right to counsel at the time counsel is waived and the lack of counsel at that time does not render such a waiver inherently involuntary. Mr. Krejcarek's claim is premised in part on his complaint that he was "unrepresented" when he made the decision to waive counsel and plead guilty pursuant to an agreement in which he would avoid incarceration. Many defendants who waive counsel are

---

[6] Mr. Krejcarek's statements about whether he executed written waivers of counsel in both cases are confusing and contradictory. He argues that "[t]he waiver he signed with each guilty plea was not signed in a voluntary, knowing and intelligent manner, since he did not understand the potential for these convictions to be used against him as crimes of violence in the future." Appellant's Opening Brief at 21. Then he also argues that the record "does not show in any respect that the right to counsel was 'expressly waived'" by him. Id. at 22. Logically, however, the main thrust of Defendant's claim – i.e., that his waiver of counsel was invalid – is necessarily premised on an acknowledgment that there was, in fact, an executed waiver of counsel in each case.

unrepresented when they do so.  Indeed, if a defendant is waiving his right to counsel, the implication is that he does not have counsel; if he had counsel, he would not have to waive his right to counsel in order to proceed.  Moreover, if the Constitution were to be interpreted so as to require the appointment of counsel before a defendant can waive his right to counsel, as Mr. Krejcarek suggests, the implications for law enforcement and the entire criminal justice system would be considerable.  Carried to its logical conclusion, even the ubiquitous Miranda advisement with respect to the right to counsel would become obsolete because counsel would have to be appointed in every instance to advise a defendant before he could decide to cooperate with the police without an attorney.

Second, there is no requirement that a defendant be advised of all potential collateral consequences of a guilty plea in order for that plea to be voluntary, knowing, and intelligent.  For a guilty plea to be voluntary, the Supreme Court has held that the standard as to the voluntariness of the guilty plea must be essentially that defined in *Brady v. United States*, 397 U.S. 742, 755 (1970).  Under that standard:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755, (quoting *Shelton v. United States*, 242 F.2d 101, 115 (5th Cir., 1957))(Tuttle, dissenting).

By using the word "direct," the Court excluded collateral consequences.  *United*

-10-

*States v. Sambro*, 454 F.2d 918, 922 (D.C. Cir. 1971).  Accordingly, this court has held

that, "'[w]hile the Sixth Amendment assures an accused of effective assistance of counsel

'in criminal prosecutions,' this assurance does not extend to collateral aspects of the

prosecution.'"  *Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992) (quoting *United*

*States v. George*, 869 F.2d 333, 337 (7th Cir. 1989)), *cert. denied*, 507 U.S. 1039 (1993).

"Actual knowledge of the consequences that are collateral to the guilty plea is not a

prerequisite to the entry of a knowing and intelligent plea."  *Id*.  *See also Harris v. Allen*,

929 F.2d 560, 562 (10th Cir. 1991) (failure to advise concerning collateral consequences

does not render a plea involuntary).  Accord *United States v. Del Rosario*, 902 F.2d 55,

56-59 (D.C. Cir. 1990) (withdrawal of guilty plea as involuntary not justified where

defendant was not advised of likely collateral consequence of deportation).  *But see*

*Jenkins v. United States,* 420 F.2d 433, 438 (10th Cir. 1970) (the court reversed because

defendant was not advised that his plea of guilty, which is a conviction, would make him

ineligible for probation or parole).[7]

Third, Mr. Krejcarek fails to carry his burden of proof to demonstrate the

invalidity of the waivers of counsel and, thus of his Colorado state convictions.

------

[7] In *Jenkins*, the defendant's ineligibility for probation or parole is a direct
consequence of his pleas of guilty for violations of the federal narcotics laws, 26 U.S.C.
§§ 4704(a) and 4705(a).  In the instant case, the enhancement of Defendant's federal
court sentence by classifying his Colorado state court convictions as "crimes of violence"
was only a potential or probable consequence at the time he entered into the Colorado
state court pleas.  Indeed, had Defendant not committed the subsequent federal crime, his
pleas of guilty in the Colorado state courts would have had no more adverse consequence
to him than he knew about at the time he entered into the pleas.

Generally, defendants may not collaterally attack prior convictions used for sentencing enhancements, with the sole exception of convictions obtained in violation of the right to counsel. *Custis v. United States*, 511 U.S. 485, 487 (1994). There is a "presumption of regularity" of prior convictions used for purposes of enhancing a sentence. *Parke v. Raley*, 506 U.S. 20, 29 (1992). To overcome this presumption and bar the use of a prior conviction for sentence enhancement, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm. *United States v. Windle*, 74 F.3d 997, 1001 (10th Cir.) (citing *United States v. Johnson*, 973 F.2d 857, 862 (10th Cir. 1992)), *cert. denied*, 517 U.S. 1115 (1996). The defendant must make an affirmative showing that the prior conviction is constitutionally invalid. *United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998). Self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded prior convictions. *Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993).

Here, Mr. Krejcarek does not proffer any evidence to support his claim that his waivers of counsel were involuntary. Instead, he makes the conclusory statement that because he did not have counsel prior to entering the pleas of guilty in the Colorado state proceedings, his waivers were involuntary. The record, however, demonstrates that his waivers were voluntary. During his testimony before the court below, his written waivers of counsel in both prior cases were admitted in evidence and acknowledged by him as having been signed by him. (Vol. VI at 22-25). Both written waivers expressly recite –

and Mr. Krejcarek repeatedly affirmed under oath – that he understood clearly that he was giving up the right "to be represented by a lawyer" and, if he could not afford a lawyer, the right "to have the court appoint a lawyer to represent" him. This is evidenced by the following testimony:

> Q. [by defense counsel] Did you understand that you had a right to an attorney to advise you of the consequences of either of the choices that you were given, either to accept the Fast Track Program or go forward with the charges as they had been brought against you?
>
> A. [by the Defendant] I know that if I would have not taken the plea bargain on that day that they would have assigned me to a public defender.

(Vol. VI at 19).

> Q. [by the prosecutor] You signed this document [referring to Fast Track Agreement/Waiver in El Paso County, Colorado, Case Number 97CR3904 which had been admitted in evidence as Exhibit 2] which stated that "I understand by pleading guilty I am waiving and giving up the following rights, (a) to be represented by a lawyer and if I cannot afford a lawyer to have the court appoint a lawyer to represent me." Is that correct, sir?
>
> A. [by the Defendant] Yes.
>
> Q. And, in fact, you testified that you knew that if you wanted a public defender, one would be appointed for you; is that correct?
>
> A. I knew that if I wanted to take it to trial because I cannot afford an attorney that yes, one would be appointed.

(*Id*. at 23).

> Q. [by the prosecutor] And does your signature also appear on it [referring to Fast Track Agreement/Waiver in El Paso County, Colorado, Case Number 03-M-1270 which had been admitted in evidence as Exhibit 3]?
>
> A. [by the Defendant] Yes, ma'am.
>
> Q. And, in fact, sir, does that particular document have a provision also that says that you – by pleading guilty you're waiving and giving up your right to

counsel?

A. Yes, ma'am.

Q. And you knew that when you plead[ed] guilty. Isn't that correct, sir?

A. I knew –

Q. You knew when you were pleading guilty you were taking the deal to take the deal [sic] and that you were giving up your right to have an attorney?

A. I knew that the deal that they offered me was going to keep me out of jail, and that's pretty much what I was looking at.

Q. And you knew that if you wanted to contest the charge at trial, a public defender would be representing – would be appointed to represent you; isn't that correct?

A. Yes, ma'am.

Q. Okay. But you chose to plead guilty without taking that route, the trial route; correct?

A. Yes, ma'am.

(*Id*. at 24-25).

Moreover, nothing in the record suggests that Mr. Krejcarek previously challenged his two prior convictions for third degree assault on constitutional or other grounds. *See Wicks*, 995 F.2d at 979 ("it is highly probative" that defendant never appealed his prior convictions "or ever sought any other direct or collateral relief until now . . .; if the pleas were truly involuntary it is difficult to believe that [he] would not have challenged them contemporaneously").

It is apparent from the record that Mr. Krejcarek had a clear and correct understanding of his Sixth Amendment right to counsel he was waiving in both of the

state cases in question, and the record amply supports the findings of the District Court to that effect in its determination that, as a matter of law, Mr. Krejcarek's rights under the Sixth Amendment were not violated. Considering this record, Mr. Krejcarek fails to carry his burden of proof and we cannot conclude that his waivers of counsel were invalid. Accordingly, it was not error for the District Court to use Mr. Krejcarek's prior Colorado state convictions to enhance his sentence for the instant offense.

### 3. *Booker* violation

Finally, Mr. Krejcarek contends that the district court's ruling violates the Supreme Court's holding in *United States v. Booker*, 125 S.Ct. 738 (2005), because he was sentenced under a mandatory regime. Mr. Krejcarek asserts that he was sentenced at the bottom of the Guidelines range and, citing this court's holding in *United States v. Labastida-Segura*, 396 F.3d 1140 (10th Cir. 2005), argues that it is impossible to know whether the District Court would have departed further below that range in a post-*Booker* regime in which the Guidelines are advisory. In essence, he argues that, under *Booker* and *Labastida-Segura*, he is automatically entitled to be resentenced with the Guidelines understood to be merely advisory.

Contrary to Mr. Krejcarek's argument, *Labastida-Segura* does not stand for the principle that the now-advisory nature of the Guidelines after *Booker* automatically requires resentencing in all cases on direct appeal in which the original sentence was imposed before *Booker* was decided. This court expressly recognized in *Labastida-Segura* that the Supreme Court anticipated in *Booker* that "harmless error may be considered in such cases (thereby obviating the need for resentencing)," and that "Fed.

-15-

R. Crim. P. 52(a) provides that '[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Labastida-Segura*, 396 F.3d at 1142. This court remanded the case for resentencing in *Labastida-Segura* because, in view of the fact that the district court had imposed a sentence at the bottom of the applicable guideline range (without exercising its discretion to depart from the applicable guideline range) when the Guidelines were thought to be mandatory, it could not be determined through harmless error analysis whether the substantial rights of the defendant had been adversely affected by the error (i.e., it could not be determined whether the district court would have exercised its discretion under the now-advisory Guidelines to impose a lesser sentence than the minimum indicated for the applicable guideline range). *See id* at 1143.

Unlike *Labastida-Segura*, the District Court in the instant case did not impose a sentence "at the bottom" of the applicable guideline range. To the contrary, the court exercised its discretion to impose a sentence less than the minimum indicated by the Guidelines. Specifically, the court exercised its discretion to grant a downward departure from the applicable guideline range and impose a sentence outside (i.e., 32 percent below) the bottom of that range. Thus, this court is not placed in the "zone of speculation and conjecture" to observe that, even in the former "legal landscape" in which the Guidelines were viewed as mandatory, the district court did not impose the minimum sentence indicated by the Guidelines (92 months), but instead chose to exercise its discretion to impose a lesser punishment (62 months). Therefore, the only question we must address is whether the district court's exercise of discretion was limited in any way by the mandatory nature of the Guidelines.

The District Court departed below the applicable guideline range pursuant to U.S.S.G. § 5K1.1. Under U.S.S.G. § 5K1.1, a district court may depart from the Guidelines on a motion by the Government stating that the defendant "provided substantial assistance in the investigation or prosecution of another person who has committed an offense." Section 5K1.1 provides five nonexclusive factors the court may consider in determining whether to depart from the Guidelines and, if so, to what extent.[8] Even though a § 5K1.1 motion "represents the government's endorsement of a downward departure" from the Guidelines, "it 'does not speak to the factors the court may consider when sentencing within the guidelines.'" *United States v. Doe*, 398 F.3d 1254, 1260 (10th Cir. 2005) (quoting *United States v. Bruno*, 897 F.2d 691, 694 (3d Cir. 1990)). Thus, the government's recommendation for imposition of a particular sentence in a § 5K1.1 motion in no way limits the court's discretion in selecting an appropriate sentence.

---

[8] The appropriate reduction shall be determined by the court for the reasons stated that may include, but are not limited to, consideration of the following:

  (1)    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
  (2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
  (3)    the nature and extent of the defendant's assistance;
  (4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and
  (5)    the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

This court has held that a district court's discretionary decision to depart from the Guidelines under § 5K1.1 is not subject to appellate review, nor is the court's determination of the extent of that departure reviewable. *United States v. McHenry*, 968 F.2d 1047, 1049 (10th Cir. 1992); *see also United States v. Khalil*, 132 F.3d 897, 898 (3d Cir. 1997). Accordingly, once a district court exercises its discretion to depart from the Guidelines, determination of the extent of that discretionary departure is within the sound discretion of the sentencing court and is not limited in any way by the Guidelines, the Government's recommendation, or any agreement between the parties. Stated differently, § 5K1.1 itself provides that, in deciding whether, and to what extent, to depart from the Guidelines, the court is free to consider any factors that it deems appropriate, and once the Government has filed a motion requesting a departure under § 5K1.1, the court is in no way constrained by the Guidelines in selecting a particular sentence which it deems appropriate. *See also United States v. Neary*, 183 F.3d 1196, 1197-98 (10th Cir. 1999).

The Government in this case filed a motion under § 5K1.1 recommending that the court depart from the Guidelines by imposing a sentence of imprisonment 32 percent shorter than would otherwise be required by the Guidelines. (*See* Vol. I, Doc. 42). The court granted that motion. (Vol. IV at 53-54). In doing so, the court was not limited in any way by the Guidelines or the Government's recommendation in its motion, but was free to consider any factors it deemed appropriate in selecting whatever particular sentence it deemed appropriate. Ultimately, the court agreed with the Government's recommendation and imposed the minimum sentence recommended by the Government. However, the court need not have done so. If the court thought that Mr. Krejcarek

-18-

deserved an even lesser sentence, it could have departed further.  *See United States v. Ollson*, 413 F.3d 1119, 1121 (10th Cir. 2005).

Once the court decided to grant a discretionary departure from the Guidelines, there was nothing of a mandatory nature in the Guidelines that determined the extent of that departure.  Therefore, Mr. Krejcarek's sentence was not adversely affected by an erroneous belief by the District Court that the Guidelines were mandatory.

Accordingly, the District Court's judgment is

AFFIRMED.