**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JESUS CORDOVA-AREVALO,

    Defendant - Appellant.

No. 05-2013

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-04-1159 JB)**

---

Terri J. Abernathy, Assistant United States Attorney (David C. Iglesias, United States Attorney, on the brief) Las Cruces, New Mexico, for Plaintiff - Appellee.

Richard C. Cauble, Las Cruces, New Mexico, for Defendant - Appellant.

---

Before **BRISCOE**, **ANDERSON** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

On June 18, 2004, Jesus Cordova-Arevalo (Cordova-Arevalo) pled guilty to illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a)(1),(2). The presentence investigation report (PSR) recommended a

sixteen-level enhancement pursuant to USSG §2L1.2(b)(1)(A), treating Cordova-Arevalo's prior Colorado conviction (third degree assault) as a felony crime of violence.[1] The enhancement resulted in a total offense level of twenty-one.[2] Coupled with a criminal history category of IV, Cordova-Arevalo's sentencing guideline range was fifty-seven to seventy-one months imprisonment.

Cordova-Arevalo did not contest the PSR's sixteen-level enhancement recommendation. Rather he argued that because Colorado classifies his prior conviction as a misdemeanor,[3] he should be sentenced under 8 U.S.C. § 1326(a), which caps a sentence at two years incarceration. The government defended the

_____

[1] The PSR applied the 2003 edition of the guideline manual in determining its sentence recommendation. USSG §2L1.2, Unlawfully Entering or Remaining in the United States, is the applicable guideline for § 1326 convictions. USSG §2L1.2 provides in relevant part: "[I]f the defendant previously was deported, or unlawfully remained in the United States after a conviction for a felony . . . that is a crime of violence . . . increase [the offense level] by 16 levels . . . ." A "crime of violence" is defined, *inter alia*, as "any offense under federal, state or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2, comment. (n.1(B)(iii)). The guideline, like the statute, does not define the term felony. But a definition is supplied in the commentary to §2L1.2 which defines a felony as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." USSG §2L1.2, comment. (n. 2).

[2] Cordova-Arevalo's base offense level was eight. The sixteen-level enhancement imposed pursuant to USSG §2L1.2 resulted in an adjusted offense level of twenty-four. Cordova-Arevalo also received a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of twenty-one.

[3] For this offense the Colorado court sentenced Cordova-Arevalo to time served (ten days in jail) and remanded him to INS custody for deportation proceedings.

PSR recommendation contending the sentencing guidelines should apply, regardless of the state classification. The guidelines treat the prior conviction as a felony, calling for a sentence under 8 U.S.C. § 1326(b) with a maximum of twenty years incarceration. At the December 8, 2004 sentencing hearing Cordova-Arevalo also argued the proper classification of his Colorado conviction (misdemeanor or felony) turned upon a factual determination, *i.e.*, the seriousness of the acts upon which the Colorado conviction was based.[4] He contends such judicial fact finding is prohibited by *Blakely v. Washington*, 542 U.S. 296 (2004). Finally, he claims a sixteen-level enhancement was unreasonable considering the relatively benign acts of misconduct (as he regards them) in the Colorado case.

---

[4]A Colorado third degree assault is categorically a crime of violence under the second prong of USSG § 4B1.2(a). *United States v. Krejcarek*, — F.3d —, 2006 WL 1892573, *2 (10th Cir. July 11, 2006); *United States v. Paxton,* 422 F.3d 1203, 1207 (10th Cir. 2005). However, the Colorado third degree assault statute "does not necessarily include the use or threatened use of physical force" as required by *USSG §2L1.2* and, therefore, its application is subject to review under *Shepard v. United States*, 544 U.S. 13 (2005). *United States v. Perez-Vargas,* 414 F.3d 1282, 1287 (10th Cir. 2005). In this case, Cordova-Arevalo's crime is analyzed for the purposes of USSG §2L1.2. Nonetheless, Cordova-Arevalo has not raised a claim that his violation of Colo. Rev. Stat. § 18-3-204 was not "a crime of violence." We assume the absence of this argument was Cordova-Arevalo's deliberate decision due to the circumstances of his offense. Though the PSR treated the Colorado conviction as a crime of violence, it did not refer to judicial documents detailing the elements of the offense of conviction. Cordova-Arevalo's objections to the PSR did not mention that deficiency but instead conceded the Colorado conviction is a felony for purposes of the sentencing guidelines. He went on to say: "Although said calculation of offense level is extremely unfair and harsh for the defendant, the definition of 'felony' under 2L1.2 does appear to be met. Accordingly, and unfortunately, the guideline offense level is 21."

The district judge rejected those arguments, applied the guideline definition of felony and decided *Blakely* did not apply to "any facts or issues related to a prior conviction."[5] (Sentencing Tr. at 10.)  Cordova-Arevalo was sentenced to fifty-seven months imprisonment, the low end of the guideline range.  The court also issued an alternate sentence of fifty-seven months in the event the guidelines would be determined unconstitutional.  This timely appeal followed.

A.  Definition Of Felony

At issue is the definition of the word "felony" as it is used in 8 U.S.C. § 1326(b).[6]  We review de novo the district court's interpretation of a statute.

---

[5] Apparently a reference to *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998).

[6] 8 U.S.C. § 1326 provides in relevant part:
 Reentry of removed aliens

(a) In general

Subject to subsection (b) of this section, any alien who--

**(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

**(2)** enters, attempts to enter, or is at any time found in, the United States, . . . .

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any

*United States v. Clemente E.*, 392 F.3d 1164, 1165 (10th Cir. 2004).  Doing so allows us to quickly dispose of Cordova-Arevalo's "factual dispute" regarding the classification of his offense.  His argument simply miscasts a legal conclusion as a factual dispute.  The prior conviction, which is undisputed, is the relevant "fact," not the specific acts of misconduct giving rise to that conviction.[7]  That brings us to the issue of statutory construction.

The government argues USSG §2L1.2, including its incorporated definition

alien described in such subsection--

**(1)** whose removal was subsequent to a conviction for commission of . . . a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both; . . . .

**(2)** whose removal was subsequent to a conviction for commission of . . . an felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both . . . .

[7] Such a fact based inquiry is forbidden by the categorical approach we must follow with respect to prior convictions. *Shepard*, 544 U.S. at 26 ("[T]o determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."); *Taylor v. United States*, 495 U.S. 575, 602 (1990).  But that is not to say the punishment imposed, evident from the judgment and sentence, and the reasonable inferences to be drawn from it cannot be considered in deciding if a departure from the guidelines is appropriate or, post-*Booker*, an exercise of sentencing discretion is warranted.  *See United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005) ("The relatively trivial nature of Mr. Trujillo's criminal history is at odds with the substantial 16-level enhancement recommended by the Guidelines for this conduct.").

of "felony," applies here. Cordova-Arevalo concedes the guidelines definition controls in defining the term felony under USSG §2L1.2 for *sentence calculation purposes*. However, he contends the calculation of his sentence under the guideline does not alter the statutory cap on his sentence if the definition of felony in the statute is determined by state classifications. According to Cordova-Arevalo, because the term "felony" in subsection 1326(b) is not defined in the statute and could be construed by either a state or a federal definition, the term is ambiguous. Not surprisingly he thinks the state definition should control. However, we need look only to basic tenets of statutory construction to conclude the district court correctly determined a "felony" under § 1326(b)(1) is "an offense punishable by a maximum term of imprisonment of more than one year." *See* 18 U.S.C. § 3156(3).[8]

*Statutory Construction*

The purpose of our inquiry is to determine whether Congress intended to use "felony" to refer to the state's classification or to a broad federal concept. While the language in subsection 1326(b)(1) provides little direction, we consider "the plainness or ambiguity of statutory language . . . by reference to . . . the specific context in which that language is used, and the broader context of the statute as a whole." *Sierra Club v. El Paso Gold Mines, Inc.,* 421 F.3d 1133,

---

[8] We reached the same conclusion in a recent unpublished decision, *United States v. Ordonez-Navarette*, 154 F.App. 66 (10th Cir. 2005).

1142 (10th Cir. 2005). When we view subsection 1326(b) from that perspective, the term felony carries but one meaning.

To determine what is meant by "felony" in the specific context of subsection 1326(b)(1), we look to the common understanding and historical use of the word. As defined by Black's Law Dictionary, "[F]elony" is "a serious crime usu[ally] punishable by imprisonment for more than one year or by death." *Id*. at 633 (7th Ed. 1999). Prior to the Sentencing Reform Act of 1984, 18 U.S.C. § 1 defined the term felony as "[a]ny offense punishable by death or imprisonment for a term exceeding one year." Congress repealed 18 U.S.C. § 1 in the passage of the Sentencing Reform Act of 1984 (effective November 1, 1987), but at the same time it implicitly retained an identical definition of felony within 18 U.S.C. § 3559(a). In § 3559(a), Congress classified offenses for sentencing purposes and identified different grades of felonies according to the maximum sentence applicable to the offense. 18 U.S.C. § 3559(a)(1)-(5). The classes of felonies run from an offense punishable by a term of over one year imprisonment to an offense punishable by death. *Id*. The least egregious felony offense is a class E felony – an offense punishable by a term of imprisonment of less than five years but more than one year. 18 U.S.C. § 3559(a)(5). Thus, Congress has clearly defined a felony by the terms of the maximum punishment attributable to an offense.

Considering the term "felony" in the context of the statute as a whole, the Congressional intent is unmistakable. Congress enacted the penalty subsections

-7-

(b)(1) and (2) of § 1326 together in 1988 to provide a sentence enhancement for recidivism. *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998) ("[W]e believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense.").[9] Along with many other circuits, we have held the term "aggravated felony" in subsection (b)(2) is "an offense [which] need not be classified [by a state] as a felony to qualify as an 'aggravated felony'." *United States v. Saenz-Mendoza*, 287 F.3d 1011, 1014 (10th Cir. 2002). Absent any contrary indication, there is no reason Congress would harbor a different intent when using the broader term "felony" in subsection (b)(1).

Such construction furthers the Congressional quest for uniformity in federal sentencing. *See United States v. Diaz-Bonilla*, 65 F.3d 875, 877 (10th Cir. 1995).[10] That same purpose of the Sentencing Reform Act remains vital today.

[9] The Court did not express a view as to whether later-amended 8 U.S.C. § 1326(3) and (4) create new offenses or are merely sentencing enhancements. *Almendarez*, 523 U.S. at 237.

[10] *Diaz-Bonilla* was based on the definition of "felony offense" found in USSG §4A1.2(o) which provides, "For the purposes of §4A1.2(c) [Sentences Counted and Excluded], a "felony offense" means any federal, state or local offense punishable by death or a term of imprisonment exceeding one year, regardless of the actual sentence imposed." In 1997, the commission added the definition of "felony" to the commentary to USSG §2L1.2. *See* Appendix C, Amendment 562 (1997). In 2001, the commission struck §2L1.2 and its accompanying commentary and inserted a replacement guideline in an effort to respond to concerns that the former §2L1.2 sometimes resulted in disproportionate penalties. *See* Appendix C, Vol. II, Amendment 632 (2001). The amendment provided a more graduated sentencing enhancement. *Id*. The

*See United States v. Booker*, 543 U.S. 220, 252 (2005) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity.") (internal citations omitted). Should the meaning of the word "felony" default to state definitions, this purpose would be severely undermined. Given Congress' well-documented and recognized quest for uniformity in sentencing, it is certain that Congress intended the term "felony" in 8 U.S.C. § 1326(b) to carry its federal connotation consistent with the sentencing guidelines and historical federal usage.

Cordova-Arevalo argues the state definition is appropriate because state courts are much more familiar with state offenses. He also stresses that the Colorado sentencing court imposed only ten days incarceration and complains that the indirect consequence of his Colorado misdemeanor conviction more than quadrupled his sentencing in this case. The argument misdirects our attention. Certainly, state courts are more familiar with state statutes and offenses. But that fact is immaterial to this issue. The sentence imposed here is for a violation of federal law. How prior convictions aggravate a federal sentence is likewise a matter of federal law and policy. As a result, we have no trouble concluding the definition of the term "felony" imported into 8 U.S.C. § 1326(b) through 18

amendment also deleted an application note providing for downward departures based on the seriousness of the former offense because the graduated enhancement negated the need for the departure provision. *Id*. In 2003, the commission's amendments to the commentary included moving the definition of felony from note 1 to note 2. *See* Appendix C, Vol. II, Amendment 658 (2003).

U.S.C. § 3559(a) and incorporated into USSG §2L1.2 commentary note 2 is consistent with an articulated federal scheme and purpose and is applicable despite a state's contrary classification of an offense.

*Blakely/Booker*

We now turn to Cordova-Arevalo's *Blakely* argument. After Cordova-Arevalo's sentencing, the Supreme Court decided *Booker*, 534 U.S. 220 (2005). In *Booker*, the Supreme Court extended its holding in *Blakely* to the federal sentencing guidelines, holding the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt." 534 U.S. at 244. To remedy the constitutional infirmity of the guidelines, *Booker* invalidated their mandatory nature, requiring the district court to consult them in an advisory fashion.[11] *Id.* at 245-46 (severing and excising 18 U.S.C. §§ 3553(b)(1), 3742(e)). Under *Booker,* a district court could potentially make two distinct types of error:

> First, a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily. As *Booker* makes clear, the Sixth Amendment prohibits this practice . . . . Second, a sentencing court could err

---

[11] *Booker* applies to all cases on direct review. *Id.* at 268. We apply both *Blakely* and *Booker* to this appeal. *See United States v. Clifton,* 406 F.3d 1173, 1175 n.1 (10th Cir. 2005) ("We must apply the holdings in *Blakely* and *Booker* to all cases in which a defendant properly raised an issue under either case.").

by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction. While this type of sentence does not violate the Sixth Amendment, such a sentence is nonetheless impermissible because the Court severed the portion of the Sentencing Reform Act that required the mandatory application of the Guidelines.

*United States v. Gonzalez-Huerta,* 403 F.3d 727, 731-32 (10th Cir.) (internal citations omitted), *cert. denied*, 126 S.Ct. (2005). Because Cordova-Arevalo preserved this issue, we review for harmless error. *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005).

Cordova-Arevalo contends that, given the facts of his Colorado offense, the district court's mandatory application of the guidelines resulted in an unreasonably harsh sentence. Thus, Cordova-Arevalo claims his sentence is unreasonable.

Cordova-Arevalo asserts his case is similar to *United States v. Trujillo-Terrazas*, 405 F.3d 814 (10th Cir. 2005). There, the district court imposed a sentence of forty-one months pursuant to USSG §2L1.2(a)(1)(A)(ii) based upon a state conviction for third-degree arson. The defendant had thrown a lit match into a car and received a sentence of a $35.00 restitution payment. *Id*. at 817. We determined the sentence was plain error and remanded for re-sentencing, in large part, because the district court clearly expressed discomfort at the harshness of the mandatory sentence. *Id*. at 820.

However, Cordova-Arevalo's case is readily distinguished from *Trujillo-*

*Terrazas*.  Rather than expressing hesitancy or concern regarding the length of

Cordova-Arevalo's sentence the district court went out of its way to embrace the

guidelines sentence.  Thus, the non-constitutional error here is more similar to

that considered in *United States v. Serrano-Dominguez*, 406 F.3d 1221, 1224

(10th Cir. 2005).  In *Serrano*, the district court issued an identical alternative

sentence in the event the guidelines were found to be unconstitutional.  We

concluded the nonconstitutional error claimed by Serrano to be harmless because

"[t]he district court's statement eliminates any need to speculate about what it

would do on remand." *Id*.

The situation here is similar.  At Cordova-Arevalo's sentencing hearing, the

district court also issued an alternative sentence of fifty-seven months, stating:

> [A]fter taking into account all of the arguments made by counsel, as
> well as reviewing the briefs and reviewing the Presentence Report –
> and I have reviewed those twice, since we have prepared for this
> hearing a couple of times to really prepare for the objection – the
> Court will also impose an alternative sentence of 57 months, with all
> other conditions being the same.

(R. Vol. III at 15.)  As this statement illustrates, a remand would be futile.  It is

clear the district court would impose the same sentence under an advisory

guideline regime.  *See United States v. Thompson*, 403 F.3d 533, 536 (8th Cir.

2005) (remand would be futile in light of identical alternative sentence).

Moreover, Cordova-Arevalo's sentence is within the guidelines range.  An

exercise of discretion in imposing a properly computed sentence under the

-12-

guidelines is presumptively reasonable, a presumption Cordova-Arevalo has failed to rebut. *See United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006) ("If . . . the district court properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable."). As a result, any error in the district court's use of mandatory guidelines was harmless.

AFFIRMED.